635 So.2d 122 (1994)
Robert L. WARREN, Appellant,
v.
STATE of Florida, Appellee.
Nos. 92-3338, 92-3340 to 92-3342, 92-3344 and 92-3345.
District Court of Appeal of Florida, First District.
April 12, 1994.
Daniel E. Myers and Walter E. Forehand of Myers & Forehand, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Amelia L. Beisner, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, for appellee.
BENTON, Judge.
Robert L. Warren appeals his conviction for grand theft of the third degree.[1] Because appellant was prosecuted in violation of the requirement that "the accused shall, upon demand, be informed of the nature and cause of the accusation against him," article 1, section *123 16, Florida Constitution, we reverse the grand theft conviction.[2]
The information the State filed against Warren seemed to allege that he had stolen money from his employer, or at least helped himself to an unauthorized loan. The information alleged that he:
did knowingly obtain, use, or did endeavor to obtain or to use UNITED STATES CURRENCY of the value of $300 or more, the property of CHANNEL 40 TELEVISION STATION, with the intent to either temporarily or permanently deprive the other person of a right to the property or a benefit therefrom or to appropriate the property to his or her own use or to the use of any person not entitled thereto, contrary to Section 812.014(2)(c)(1), Florida Statutes.
By his plea of not guilty, appellant exercised his right to put the State to its proof. He also complained that he did not know exactly what he stood accused of.
The trial court twice denied appellant's verified motion to dismiss or, in the alternative, motion for statement of particulars.[3] Orally argued on March 25, 1992, and again on May 20, 1992, this pleading asked the trial court to require the State to specify when the theft of money had allegedly occurred, adding "it is obvious that if the State does not really mean `currency,' but wishes to prove that Defendant took some other property, then Defendant must be so notified."
Evidence at trial established that Warren worked for a television station; that among his duties as a salaried employee[4] was to sell advertising; and that he had arranged for advertising for certain businesses at no charge to them. Warren testified that he offered free advertising in hopes that the recipients would be so encouraged by the results that they would be persuaded to purchase advertising from his employer in the future.[5]
Learning what Warren had done, Warren's employer discharged him and notified law enforcement authorities. At trial, Warren conceded that he had not obtained his employer's approval to offer advertising at no charge. There was no evidence, however, that Warren received any money or other consideration from the businesses, or any extra remuneration from his employer on account of the advertising in controversy.
At the first hearing on the alternative motion for statement of particulars, defense counsel conceded that "if he is resting on the fact that he thinks a salary was taken and that's the money he is talking about, then I certainly agree, he has traversed and that's a factual issue." (R. at 570.) But the prosecutor never said that he intended to prove that appellant was guilty of theft in accepting his salary, and the case was not tried on that theory. Instead the trial featured information about production and other costs to the television station, and the prosecutor argued for conviction on the basis of "the costs that *124 Channel 40 incurred as a result of these documents that were submitted by the Defendant." (T. at 193.)
At the charge conference the question of just what property the appellant was alleged to have taken again arose. Defense counsel, whose earlier request for "an instruction that the property involved is supposed to be cash" (T. at 178) had been denied, objected to the giving of the standard jury instruction on the value of written instruments other than checks, drafts, or promissory notes.
MR. FOREHAND [defense counsel]: I don't believe we are dealing with written instruments... .
MR. POITINGER [prosecutor]: Well, I don't agree . .. We have introduced some instruments, and it may well be that the jury is going to be concerned  I think the argument has been made by Defense Counsel as to how much out of pocket have you lost and so forth. I think this says to us that when we are dealing with other instruments that create certain valuable legal rights, that the jury is to look to the amount of greatest economic loss that the owner of the instrument can suffer... .
On this point, the prosecutor prevailed,[6] even though the only "written instruments" in evidence were unenforceable contracts or interoffice memoranda calling for free advertising. The proof did not show, moreover, that these papers had been purloined.
On appeal, the assistant attorney general suggested a range of possible subjects of theft,[7] arguing that the conviction should be upheld on the basis, inter alia, of appellant's having diminished his employer's revenues. But the proof did not establish lost revenues, as opposed to increased expenses, and any such "currency" never became the property of the supposed victim of the theft.
It is "elemental that an accused cannot be convicted of an offense for which no charges have been brought." Brownlee v. State, 427 So.2d 1106, 1108 (Fla. 3d DCA 1983). "The general rule is where an offense may be committed in various ways, the evidence must establish it to have been committed in the manner charged in the indictment [or information.]" Long v. State, 92 So.2d 259, 260 (Fla. 1957). "No principle of criminal law is better settled than that the State must prove the allegations set up in the information or indictment." Lewis v. State, 53 So.2d 707, 708 (Fla. 1951).
The record here reveals much more than the mere "possibility that the defendant may have been misled or embarrassed in the preparation or presentation of his defense." Sharp v. State, 328 So.2d 503 (Fla. 3d DCA 1976). Even now that the trial has concluded, the State has difficulty articulating with precision the basis for the conviction. The present case is just the sort Justice Terrell warned against, when he wrote that "to let down the bar of strictness ... would be conducive to looseness in criminal prosecutions that might become intolerable to due process." Lewis v. State, 53 So.2d 707, 708 (Fla. 1951).
We therefore reverse appellant's convictions and the order revoking probation and community control.
ERVIN and BARFIELD, JJ., concur.
NOTES
[1] Section 812.014, Florida Statutes (1991) provides:

(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom.
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
(2) ...
.....
(c) It is grand theft of the third degree and a felony of the third degree ... if the property stolen is:
1. Valued at $300 or more, but less than $20,000.
[2] Before his arrest for grand theft, Warren had been sentenced to probation and community control on earlier charges as to which adjudication had been withheld. In consequence of the grand theft conviction, the trial court revoked his probation and community control, adjudged him guilty of the earlier charges, and sentenced him on the convictions. Appeal of the judgments of conviction in those cases has been consolidated with appeal of the grand theft conviction. Because they are predicated on the grand theft conviction, we also reverse the order revoking probation and community control, and the consequent adjudications and sentences.
[3] Florida Rule of Criminal Procedure 3.140(n) provides:

The court, on motion, shall order the prosecuting attorney to furnish a statement of particulars when the indictment or information on which the defendant is to be tried fails to inform the defendant of the particulars of the offense sufficiently to enable the defendant to prepare a defense. The statement of particulars shall specify as definitely as possible the place, date and all other material facts of the crime charged that are specifically requested... . Reasonable doubts concerning the construction of this rule shall be resolved in favor of the defendant.
[4] Murleen Mizell testified on deposition that "money based on a commission for sale [was never] ... part of his compensation," but also testified that the "base salary is considered commission."
[5] The jury apparently rejected appellant's testimony that he acted in what he thought was his employer's best interest in offering free advertising. Cf. Luke 16:1-8.
[6] The trial court instructed the jury:

If you find the Defendant guilty of theft, you must determine by your verdict whether the value of the property taken was $300 or more, but less than 20,000.
.....
"Property" means anything of value and includes United States Currency.
"Value" means the market value of property at the time and place of the offense; or, if that value cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the offense.
In the case of any other instrument that creates, releases, discharges, or otherwise affects any valuable legal right, privilege, or obligation, the value is the greatest amount of economic loss that the owner of the instrument might reasonably suffer by virtue of the loss of the instrument. If the exact value of the property cannot be ascertained, you should attempt to determine a minimum value. If you cannot determine the minimum value, you must find the value is less than $300. (T. at 226-27.)
[7] The assistant attorney general conceded that no evidence tended to show that appellant had taken any currency.