711 So.2d 1197 (1998)
Charles Clinton AMOS, Appellant,
v.
STATE of Florida, Appellee.
No. 96-01078.
District Court of Appeal of Florida, Second District.
April 27, 1998.
Rehearing Denied June 1, 1998.
William C. Lane of Masselli & Lane, P.C., Arlington, VA, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ann Pfeiffer Corcoran, Assistant Attorney General, Tampa, for Appellee.
PATTERSON, Acting Chief Judge.
Charles Amos appeals from his convictions of one count of racketeering under section 895.03, Florida Statutes (1985) ("Florida RICO (Racketeer Influenced and Corrupt Organization) Act"), seven counts of first-degree grand theft, three counts of second-degree grand theft, and one count of third-degree grand theft, all under section 812.014, Florida Statutes (1985). Amos has raised two issues that require consideration. The first relates to the sufficiency and timeliness of the charging document. The second is whether his insurance dealings constitute grand theft.
Amos was the president of Aanco Underwriters, Inc. (Aanco), an insurance agency principally owned by his deceased wife. The State's theory of prosecution was that Amos reduced the cost of workers' compensation insurance to Aanco's clients by various means, resulting in the insurance carriers receiving less premiums than to which they were legally entitled.
Rates and procedures for calculating Florida's workers' compensation insurance premiums are developed by the Department of Insurance, acting in conjunction with the National Council on Compensation Insurance, Inc. (NCCI), a body organized by and acting on behalf of the insurance carriers that write workers' compensation insurance. The rate determination process considers the job categories to be insured and the insured's own claims experience. Using these criteria, the employer (insured) estimates its own premium liability for a twelve-month period. The estimate, based on anticipated payroll by job category, is then subject to adjustments resulting in the employer's net payroll by job *1198 category. Each job category has a premium rate per one hundred dollars of anticipated salary. These rates vary based on the degree of risk of injury associated with the particular job category. The insured (most often assisted by the insurance agent) then multiplies the anticipated net payroll for each job category by the rate for that category. That amount is then adjusted by the "experience rating" assigned to it by the NCCI. Because the rate determination is based principally on estimates of payroll, it is not, nor expected to be, precise. For this reason, each business is subject to a year-end audit by the insurance carrier to determine the true premium based on actual figures. This audit, not necessarily performed as to each business, can result in a premium increase or decrease.
The State accused Amos of fraudulently manipulating premiums due primarily by understating his clients' estimated payrolls. It contended that in some instances Amos misclassified the jobs of certain employees and submitted false documentation of change of ownership of a business to alter the "experience rating" of the company. The State alleged that Amos's underlying motivation was to obtain the other insurance business of the companies. To assist in the implementation of this overall scheme, Amos offered to handle an audit of the company if one occurred and, in so doing, provided partial or false payroll information to the auditor to support the initial false payroll estimate.
The prosecution began when the Statewide Grand Jury returned an indictment against Amos and John Fessenden, an Aanco employee, on November 13, 1991. That original indictment charged Amos with one count of RICO, eight counts of grand theft, and one count of organized fraud. Fessenden was charged as a codefendant in the RICO and organized fraud counts and with several charges of grand theft. A superseding indictment was filed on May 13, 1992, which added new grand theft counts 15, 16, and 17 as to Amos (and 18 as to Fessenden).
The case languished, primarily due to a companion civil RICO action which had frozen Amos's assets, preventing him from retaining counsel. On October 20, 1995, the trial court heard Amos's motion to dismiss counts 1, 2, 8, and 14-16 of the superseding indictment on limitation grounds. Each challenged count charged unlawful conduct beginning before the relevant limitations date, but ending within the limitation period.[1] The court granted the motion as to counts 2, 4, 15, and 16 without prejudice and gave the State leave to amend.
Rather than returning to the grand jury for another amendment, the statewide prosecutor filed a document entitled "Re-File Information and Continuation of Tenth Statewide Grand Jury Indictment in Pinellas County Case No. CRC 91-18471CFANO" in the Circuit Court of the Sixth Judicial Circuit where the amended indictment was pending. This "Re-File Information" amended counts 2, 14, 15, and 16 to bring them within the statute of limitations.
It is Amos's position that the "Re-File Information" is a new and independent charging document which constitutes an abandonment of the original and superseding indictments. As such, all offenses charged in the "Re-File Information" are outside the applicable statute of limitations and barred. We agree with the trial court that the refile information does not constitute an abandonment of the previous indictments. The amendments to the charges in counts 2, 14, 15, and 16 narrow the time frame of the offenses. This is not a substantive change from the original charging documents. See State v. Nuckolls, 677 So.2d 12 (Fla. 5th DCA), review denied, 686 So.2d 582 (1996). The "Re-File Information" merely continues the original prosecution, rather than initiates a new and independent prosecution. Each of the charging documents name the same defendants and enumerates the same charges. The "Re-File Information" specifically states that it is a continuation of the original indictment and makes clear that the State did not abandon the original prosecution. The "Re-File *1199 Information" provides the necessary "linking language" to the original charging document. See DiStefano v. Langston, 274 So.2d 533 (Fla.1973). As such, it is a continuing part of the original indictment.
The next and more difficult issue is whether Amos's conduct as charged in each of the predicate acts of the RICO count and each of the individual grand theft counts constitutes theft. The pertinent language of each charge is "did unlawfully and knowingly obtain or use, or endeavor to obtain or use by fraud, willful misrepresentation of a future act, false promise, false pretenses, or deception, the property of (named insurance company), to-wit: insurance premium and/or cash, good and lawful currency of the United States." There was no evidence that Amos diverted or converted any actual cash or currency. The charge, therefore, is that he did or endeavored to commit theft of "premium" for himself or on behalf of another. Because Amos was not an insured and was not liable for the payment of any "premium," the "premium" obtained was for the benefit of the insured. The first question is whether "premium" is a form of "property" contemplated by section 812.014 as being subject to theft. In the context of insurance, a "premium" is the amount of money paid in return for the contract of insurance. In each of the scenarios presented in this case, there was a contract of insurance issued in return for the payment of a premium. It is not charged that the stated premium was not paid or was in some way diminished or diverted. The information charged that the difference between the amount of the premium charged and paid, and what is contended should have been the premium, is what is the subject of the theftin other words, the shortfall of revenue due to the company determined by a recalculation of "premium" using different base figures. Therefore, it is "premium" not calculated or billed which is the subject of theft. The issue is complicated by the manner in which workers' compensation insurance premiums are initially determined. As we have explained above, the system is based on estimates. In simplified terms, the insured estimates its payroll. Based on that estimate and other factors, an estimated premium is determined. It is the estimated premium which is due and payable. At the end of the policy term, the insurance company may perform an audit of the insured and, based on actual figures, come to a precise premium for the policy term, which may be more or less than the estimated premium paid. If there is no audit, then the estimated premium paid becomes the actual premium, whether or not it is accurate.
We have been unable to find a single criminal case wherein an insurance agent, or an insured, has been prosecuted for misrepresenting payroll or other factors upon which workers' compensation insurance (or any other form of insurance) premium is initially calculated. Similar schemes have, however, been the subject of civil liability as to both the agent and the insured. In U.S.F. & G. Co. v. Paul Assoc., 230 Ga.App. 243, 496 S.E.2d 283 (1998), a company obtained a reduced workers' compensation insurance premium after having been qualified for an "assigned risk pool" based on misrepresentations in the application for insurance. The company, its principals, and the agent were found liable for damages. In Montana ex rel. State Compensation Mutual Insurance Fund v. Berg, 279 Mont. 161, 927 P.2d 975 (1996), the employer was found liable to the state insurance fund for misrepresenting payroll and misclassifying employees. In Disciplinary Counsel v. Dukat, 79 Ohio St.3d 189, 680 N.E.2d 972 (1997), a lawyer was disciplined for participating in a scheme to reduce workers' compensation insurance premiums by using false payroll figures. We note that each of these cases is of recent vintage and we have been unable to find a pattern of this type of civil litigation.
On the criminal side, two Florida cases touch remotely on the issue presented here. In Briklod v. State, 365 So.2d 1023 (Fla. 1978), on dissimilar facts, an insurance agent was found not to have committed grand theft for knowingly making false representations in insurance applications. In Warren v. State, 635 So.2d 122 (Fla. 1st DCA 1994), an employee of a television station was found not to have committed grand theft by giving away free advertising on the station without authorization.
*1200 Perhaps, in recognition of problems in this area of existing law, the legislature enacted section 440.37, Florida Statutes (Supp.1990), which states in pertinent part:
440.37 Misrepresentations; fraudulent activities; penalties.
....
(4) Any person who knowingly makes any false or misleading statement or representation, whether written or oral, required by s. 440.381 for the purpose of avoiding or diminishing the amount of the payment of any workers' compensation premiums to a carrier or self-insurance fund commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
....
440.381 Application for coverage; reporting payroll; payroll audit procedures; penalties.
(1) Applications by an employer to a carrier for coverage required by s. 440.38 shall be made on a form prescribed by the Department of Insurance. The Department of Insurance shall adopt rules by January 1, 1991, for applications for coverage required by s. 440.38. The rules shall provide that an application include information on the employer, the type of business, past and prospective payroll, estimated revenue, previous workers' compensation experience, employee classification, employee names, and any other information necessary to enable a carrier to accurately underwrite the applicant. The rules shall also require that an employer update an application monthly to reflect any change in the required application information.
(2) The application or application update shall contain a statement that the filing of an application or application update containing false, misleading, or incomplete information with the purpose of avoiding or reducing the amount of premiums for workers' compensation coverage is a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The application shall contain a sworn statement by the employer attesting to the accuracy of the information submitted and acknowledging the provisions of s. 440.37(4).
Section 440.37 has now been modified and recodified into section 440.105, Florida Statutes (1997), which provides:
440.105 Prohibited activities; penalties.
....
(4) Whoever violates any provision of this subsection commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
....
5. To knowingly make any false, fraudulent, or misleading oral or written statement, or to knowingly omit or conceal material information, required by s. 440.185 or s. 440.381, for the purpose of obtaining workers' compensation coverage or for the purpose of avoiding, delaying, or diminishing the amount of payment of any workers' compensation premiums.
6. To knowingly misrepresent or conceal payroll, classification of workers, or information regarding an employer's loss history which would be material to the computation and application of an experience rating modification factor for the purpose of avoiding or diminishing the amount of payment of any workers' compensation premiums.
These sections were not in effect during the time frame of Amos's alleged offenses.
The law which was in effect in the 1986-90 period of Amos's activities was section 626.9541, Florida Statutes (Supp.1986), which provided:
626.9541 Unfair methods of competition and unfair or deceptive acts or practices defined.
(1) UNFAIR METHODS OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS.The following are defined as unfair methods of competition and unfair or deceptive acts or practices:
....
(k) Misrepresentation in insurance applications.
1. Knowingly making false or fraudulent statements or representations on, or *1201 relative to, an application for an insurance policy for the purpose of obtaining a fee, commission, money, or other benefit from any insurer, agent, broker, or individual.
2. Any agent, solicitor, examining physician, applicant, or other person who knowingly makes any false and fraudulent statement or representation in, or with reference to, any application or negotiation for insurance, in addition to any other penalty provided in this act, shall, upon conviction, be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
The relationship between the predecessor to this section (section 626.984, Florida Statutes (1973)) and grand theft was touched upon in Briklod. There, Briklod, the insurance agent, participated in a complex scheme involving multiple health and accident insurance policies upon which subsequent claims were made based on false accidents. Briklod filled out the policy applications in various names while in the presence of the "insured," who signed the applications in the names reflected. The court stated:
We agree the evidence is insufficient to support a conviction of grand larceny and, consequently, find appellant is entitled to a judgment of acquittal. Specifically, appellant argues that the State never proved that he intended to participate in the commission of the crime of grand larceny. Appellant concedes that there was sufficient evidence to convict him of submitting false or misleading applications, which crime is punishable as a misdemeanor by Section 626.984, Florida Statutes (1973). Appellant's brief p. 41. His interest in falsifying such statements was to receive multiple commissions. However, Briklod argues the record reflects that he was not supposed to receive and did not receive one penny from the false accidents. According to appellant, such evidence weighs heavily against the conclusion that he acted with intent to commit or participate in the commission of grand larceny.
365 So.2d at 1024-25. Amos, like Briklod, received monetary benefit only from the commissions he derived. There is no evidence that Amos received any kickback from savings realized by the insured. Differing from Briklod, however, is that the savings derived by Amos's insureds emanated from his overall scheme, whereas the thefts in Briklod derived from subsequent unconnected events to which Briklod was not a party. We, therefore, address a question of first impression in regard to Amos.
In reaching our determination, we consider relevant the point in time when Amos committed a criminal offense, if any. At an early stage of these proceedings, the State, in opposition to a motion to dismiss on statute of limitations grounds, argued that the crimes were not complete until the end of the policy terms. At such time, the actual losses of the insurance companies were subject to precise determination. We, however, conclude that the offenses occurred at the time the insurance company issued or was committed to issue a policy at a stated premium. At that time, nothing existed except an estimated premium based on estimated information from the insured. Assuming that "premium" can be property subject to theft, estimated "premium" is not. Estimates which are subject to later recalculations have no value. Estimate is defined in Websters Third New International Dictionary 778 (1986) as "a value judgment that is often valid, but incomplete, approximate or tentative." As such, they cannot form the subject of theft. Amos's practices were dishonest. He clearly violated section 626.9541 by making false statements on insurance applications, a second-degree misdemeanor, but did not violate section 812.014, the theft statute. As in Warren, the State here "has difficulty articulating with precision the basis for the conviction." Warren, 635 So.2d at 124. It is with reluctance that we reverse Amos's convictions and direct that he be discharged.
We certify to the supreme court the following question which we determine to be of great public importance.
IS THE OBTAINING OF A REDUCED INITIAL PREMIUM FOR WORKERS' COMPENSATION INSURANCE BY MISREPRESENTATIONS OF STATUTORILY-REQUIRED FACTORS USED TO DETERMINE THAT PREMIUM *1202 THEFT UNDER SECTION 812.014, FLORIDA STATUTES?
ALTENBERND and WHATLEY, JJ., concur.
NOTES
[1] For the grand theft counts charged in the initial indictment, the relevant limitations date was December 13, 1986. For the grand theft counts added in the superseding indictment, the relevant date was May 13, 1987.