ALTENBERND, Judge.
 

 John H. Fessenden appeals an order dismissing with prejudice his petition seeking court certification that he is a wrongfully incarcerated person entitled to compensation under the Victims of Wrongful Incarceration Compensation Act (the Act).
 
 See
 
 §§ 961.01-07, Fla. Stat. (2008). This appeal appears to be the first appeal of any claim made under this statute, which first became effective in July 2008.
 
 See
 
 ch. 2008-39, §§ 1, 9, at 714, 721, Laws of Fla.
 

 As further explained below, Mr. Fessen-den obtained a reversal of his judgments and sentences by this court on the ground that his questionable conduct did not constitute grand theft or a violation of Florida’s Racketeer Influenced and Corrupt Organizations (RICO) Act. We agree with the trial court that the Victims of Wrongful Incarceration Compensation Act, as written by the legislature, applies only to claims where orders vacating sentences have been entered based on “exonerating evidence.” § 961.03(l)(a). Because Mr. Fessenden obtained an order vacating his judgment and sentence based on the ruling of an appellate court as a matter of law, and not based on exonerating evidence of his actual innocence, we conclude that the Act, strictly construed, does not encompass his claim. Accordingly, we affirm the order on appeal.
 

 I. The Underlying Criminal Proceeding
 

 Mr. Fessenden and his codefendant, Charles Amos, were charged in an indictment and in a superseding information with violating Florida’s RICO Act and with multiple counts of grand theft. The factual circumstances behind these charges are described in some detail in the opinion of this court reversing Mr. Amos’s judgments and sentences.
 
 See Amos v. State,
 
 711 So.2d 1197 (Fla. 2d DCA 1998).
 

 In a nutshell, Mr. Fessenden was an insurance agent who handled workers’ compensation insurance for his clients in the 1980s. He was charged and convicted of RICO violations and grand theft because he was assisting his clients in submitting false estimates of premium liability at the beginning of a policy year to the insurance company, which substantially reduced the premiums that the clients paid to the insurance companies. In cases where the insurance company sought an audit at the end of the policy year, he helped provide false payroll information to the auditor in an effort to avoid paying the
 
 *3
 
 premium increase that should have resulted from an accurate year-end audit.
 

 This court’s opinion in
 
 Amos
 
 clearly reflects our concern that the conduct was morally improper.
 
 See id.
 
 at 1201 (citing § 626.9541, Fla. Stat. (Supp.1986)) (recognizing that Amos’s practice of making false statements on insurance applications was “dishonest” and constituted a second-degree misdemeanor). We discussed statutes enacted after these events that may have criminalized the conduct.
 
 Id.
 
 at 1200. We concluded, however, that the conduct did not fit within the elements of grand theft or RICO.
 
 Id.
 
 at 1201. The issue was sufficiently close and of such importance that we certified a question to the supreme court as to whether the conduct constituted theft.
 
 [1]
 

 Id.
 
 at 1201-02. The supreme court declined to review the certified question.
 
 State v. Amos,
 
 727 So.2d 911 (Fla.1998) (table decision).
 

 Based on the reasoning in
 
 Amos,
 
 this court also reversed Mr. Fessenden’s judgments and sentences, certifying the same question as was certified in
 
 Amos. Fessenden v. State,
 
 713 So.2d 1093 (Fla. 2d DCA 1998). The supreme court declined to review the question in Mr. Fessenden’s case.
 
 State v. Fessenden,
 
 734 So.2d 1038 (Fla.1999).
 

 From the limited record in this case, we cannot determine when or if Mr. Fessen-den was in prison as a result of the judgments and sentences that this court reversed in 1998. It appears likely that he was incarcerated from November 1996 until mid-1998.
 

 II. The General Procedures Applicable Under The Victims of Wrongful Incarceration Compensation Act
 

 The Victims of Wrongful Incarceration Compensation Act was enacted in 2008.
 
 See
 
 ch. 2008-39, §§ 1, 9, at 714, 721, Laws of Fla. Obviously, the Act became effective about ten years after Mr. Fessenden’s judgments and sentences were vacated. The Act, however, specifies that if a person’s judgments and sentences were vacated prior to the effective date of the statute, the person could petition for compensation so long as the petition was filed by July 1, 2010. § 961.03(l)(b)(2). Thus, Mr. Fessen-den’s petition is timely because he filed it on February 23, 2009.
 

 The Act is the entire contents of chapter 961. It is administered by the Department of Legal Affairs, and the Chief Financial Officer of the State arranges any compensation awarded under the Act. § 961.06(3), (4). Before a person can apply to the Department for compensation, the person must first obtain a determination that he or she is a “wrongfully incarcerated person” under the statute. §§ 961.02(4), .03.
 
 [2]
 

 An official determination that one is a “wrongfully incarcerated person” requires the person to return to the court where the judgment and sentence were vacated. The person files a petition in that court seeking a determination of this status. § 961.03(1). The prosecuting authority is
 
 *4
 
 required to respond to the petition and either certify that the person is “not ineligible” to be so classified or to contest the petition. § 961.03(2).
 

 If the prosecutor does not contest the petition, based on the “evidence of actual innocence” and other evidence, the court is authorized to find by-clear and convincing evidence that the person is eligible and to issue an order certifying this status to the Department. § 961.03(3). If the prosecutor contests the petition, the trial court can either dismiss the petition if the person is “ineligible under the provisions of [section] 961.04” or it can transfer the matter to the Division of Administrative Hearings for a hearing to resolve the factual disputes. § 961.03(4). Once the hearing is concluded, the matter returns to the trial court to enter an order either granting or denying the determination that the person is a “wrongfully incarcerated person.” § 961.03(6), (7).
 

 III. The Trial Court’s Dismissal
 

 The trial court in this case dismissed Mr. Fessenden’s petition, but it did not dismiss the petition pursuant to section 961.03(4)(a). That provision allows the court to dismiss the petition if the petitioner is ineligible under the provisions of section 961.04. Section 961.04 provides three grounds for exclusion from eligibility: (1) conviction of any prior felony in Florida or another state, (2) conviction of another felony while incarcerated, and (3) the existence of a concurrent sentence for a crime for which the petitioner was not wrongfully convicted. None of these exclusions applies to Mr. Fessenden. Thus, the trial court could not dismiss the petition under section 961.03(4)(a).
 

 The trial court dismissed the petition on the grounds that Mr. Fessenden was not, by definition, a “wrongfully incarcerated person” and that the petition could not be amended to state a claim. In essence, the trial court dismissed the petition for failure to state a cause of action. Although the statute does not provide for such a dismissal, we agree with the trial court that it had inherent authority to dismiss the petition on this ground.
 
 [3]
 
 Thus, the dispositive issue in this case is whether the reversal of Mr. Fessenden’s judgments and convictions on appeal because the conduct proven at trial did not constitute the charged offense qualifies him as a “wrongfully incarcerated person.”
 

 IV. The Definition of “Wrongfully Incarcerated Person” in Section 961.02(4) must Be Read in Conjunction with the Provisions in Section 961.03(l)(a).
 

 On initial examination, it does appear that Mr. Fessenden is arguably a “wrongfully incarcerated person” as that term is defined in section 961.02(4). That definition states:
 

 “Wrongfully incarcerated person” means a person whose felony conviction and sentence have been vacated by a court of competent jurisdiction and, with respect to whom pursuant to the requirements of s. 961.03, the original sentencing court has issued its order finding that the person neither committed the act nor the offense that served as
 
 *5
 
 the basis for the conviction and incarceration and that the person did not aid, abet, or act as an accomplice or accessory to a person who committed the act or offense.
 

 § 961.02(4). Mr. Fessenden clearly has had his conviction and sentence vacated by a court of competent jurisdiction. Although he committed certain acts, this court on appeal declared that he had not committed the offense that served as the basis of the conviction.
 
 See Fessenden,
 
 713 So.2d at 1093 (citing
 
 Amos,
 
 711 So.2d 1197). Because we determined that the acts were not criminal, at least under the charged offenses, it would not seem that he could aid or abet Mr. Amos or any other person in those offenses. As it stands, the acts he committed are not criminal acts.
 

 The definition of “wrongfully incarcerated person,” however, includes a requirement that the trial court have issued its order under section 961.03. Section 961.03(l)(a) explains that in order to meet the definition of “wrongfully incarcerated person,” the petitioner must establish that the conviction and sentence were vacated by an order “based upon exonerating evidence.” The petition itself must “[sjtate that verifiable and substantial evidence of actual innocence exists and state with particularity the nature and significance of the verifiable and substantial evidence of actual innocence.” § 961.03(l)(a)(l).
 

 In his petition, Mr. Fessenden described this court’s opinion reversing his judgment and sentence as the verifiable and substantial evidence of actual innocence. It is certainly true that the trial court vacated his judgments and sentences in order to comply with our mandate. However, we conclude that our legal opinion in this context is not “exonerating evidence” establishing a defendant’s actual innocence for purposes of this Act.
 

 It is perhaps worth noting that this court can reverse a criminal judgment and sentence employing at least four different rationales. First, we can reverse and remand for new trial when a procedural error renders the judgment and sentence faulty.
 
 See, e.g., Fasenmyer v. State,
 
 383 So.2d 706, 708 (Fla. 1st DCA 1980) (reversing based on trial court’s failure to hold a Richardson
 
 [4]
 
 inquiry after discovery violations by the State). Second, we can reverse when the State charged a defendant with a crime that it had probable cause to believe the defendant committed but for which it did not have the necessary proof at the time of trial. Third, we can reverse when a crime has actually occurred but the State failed to prove that the defendant committed the crime. Fourth, as in this case, we can reverse because the State proved its intended case but the proof did not, as a matter of law, constitute a crime.
 
 See, e.g., Merritt v. State,
 
 712 So.2d 384, 385 (Fla.1998) (reversing conviction for nonexistent crime of attempted battery of a law enforcement officer);
 
 see also B.B.P. v. State,
 
 841 So.2d 687, 688 (Fla. 2d DCA 2003) (reversing conviction for nonexistent crime of possession of stolen property).
 

 It seems obvious to this court that the first described reversal cannot be proof of actual innocence. Likewise, we doubt that any of these bases for reversal, without more evidence, are sufficient to constitute evidence of actual innocence. In this case, however, we are considering only the final ground, which admittedly comes closest to being evidence of actual innocence.
 

 When an appellate court reverses a judgment and sentence for lack of evidence, it does not make any determination that the defendant is actually innocent; it
 
 *6
 
 merely determines that the State did not provide evidence that could support a verdict of guilt beyond a reasonable doubt. There is a substantial difference in our system of justice between the concept of “not guilty” and that of “actual innocence.” The Bill Analysis and Fiscal Impact Statement prepared by the staff of the Judiciary Committee demonstrates that the Victims of Wrongful Incarceration Compensation Act was prompted by cases in which DNA evidence had exonerated defendants.
 
 See
 
 Fla. S. Bill Analysis & Fiscal Impact Statement of Mar. 26, 2008, § 2 for Bill CS/SB 756, p. 2 (“In Florida, at least nine people have been exonerated or released from incarceration since 2000, as a result of post-conviction DNA testing.”). The legislature was concerned about compensating persons who were actually innocent, but not necessarily about paying people who had been found not guilty.
 

 Mr. Fessenden, it would seem, does not fall cleanly into either the group of people who are “not guilty” or those who are “actually innocent.” In this case, there is no question that Mr. Fessenden “committed the act” that “served as the basis for the conviction and incarceration.”
 
 See
 
 § 961.02(4). The error in Mr. Fessenden’s criminal case was not one of fact, but of law. The acts he committed that served as the basis of the conviction were not acts that legally constituted the crime. The grand jury, the prosecutor, and the trial court, perhaps misled by their sense that Mr. Fessenden’s actions were immoral, erred in their respective legal analyses of the factual circumstances underlying the conviction.
 

 The language of this statute does not apply to a person who is acquitted on a motion for judgment of acquittal at the end of the State’s case; it requires that the trial court have entered a judgment and conviction. Thus, no remedy is provided based on the trial court’s legal ruling even if the defendant spent many months in jail awaiting trial. This decision by the legislature causes this court to doubt that the legislature intended a different outcome when the legal ruling emanates from the district court. On the other hand, our decisions are often made after the defendant has spent more than a year in prison.
 

 Although not a complete waiver of sovereign immunity, the Victims of Wrongful Incarceration Compensation Act is in the nature of a statute waiving sovereign immunity.
 
 But cf.
 
 § 961.06(7) (“Any payment made under [the Act] does not constitute a waiver of any defense of sovereign immunity.”). The Act does not authorize a lawsuit against the State, but it creates a streamlined claims process that is similar in practice and outcome to a lawsuit. The Act sets aside questions of wrongdoing or negligence on the part of a state actor and creates an avenue for relief against the State by a person who has been wrongfully incarcerated.
 

 It is well established that provisions for bringing suit against the State under article X, section 13, of the Florida Constitution must be strictly construed. “When a statute purports to authorize a waiver [of sovereign immunity], the statutory language must be clear and unequivocal; such statutes should be strictly construed.”
 
 McPhee v. Dade Cnty.,
 
 362 So.2d 74, 79 (Fla. 3d DCA 1978);
 
 see also Am. Home Assurance Co. v. Nat’l R.R. Passenger Corp.,
 
 908 So.2d 459, 472 (Fla.2005) (“In interpreting ... legislative waivers of sovereign immunity, this Court has stated that it must strictly construe the waiver.”). Waivers of sovereign immunity are strictly construed “as a protection of the public against profligate encroachments on the public treasury.”
 
 Spangler v. Fla. State Turnpike Auth.,
 
 106 So.2d 421, 424 (Fla.
 
 *7
 
 1958). We conclude that these policies are applicable to the Act and that it should be strictly construed in favor of the State. Under such a strict construction, an order vacating a conviction and sentence based on the legal ruling of this court is not an order “based upon exonerating evidence,” as required by section 961.03(l)(a).
 

 Morally, Mr. Fessenden’s conduct may have been offensive, but it was not a crime. Prisons are not constructed to house people guilty of moral improprieties, and a public policy that would compensate people like Mr. Fessenden might arguably be in order. If the legislature wishes to adopt that policy, it is free to do so, but we cannot conclude that it adopted such a policy with the language currently contained in chapter 961.
 

 Affirmed.
 

 WALLACE, J, and FULMER, CAROLYN K, Senior Judge, Concur.
 

 [1]
 

 . The author of this opinion was also a member of the panel that reviewed Mr. Fessen-den’s and Charles Amos's direct criminal appeals in 1998.
 
 See Amos,
 
 711 So.2d at 1202;
 
 Fessenden,
 
 713 So.2d 1093 (Fla. 2d DCA 1998). This is the result of a random assignment and not a selection that was intentional on the part of this court.
 
 See
 
 Second District Court of Appeal,
 
 Internal Operating Procedures,
 
 Office of the Clerk, § 3.4 at 9-10 (Jan. 18, 2005), http://www.2dca.org/Clerk/Notices/ Internal% 20Operating% 20Procedure% 2010-26-07.pdf.
 

 [2]
 

 . The exact language of the statute is more complex than the simplified explanation provided in this opinion. Those complexities are not essential to our ruling, and we do not intend by our simplification to alter the language of the statute.
 

 [3]
 

 . Mr. Fessenden also argues that the trial court was required to certify his status to the Department because the prosecuting authority did not file its response within the thirty days described in the statute. We disagree. The prosecuting authority in this context is not a party who can be "defaulted.” If the prosecuting authority declined to respond, Mr. Fessenden was certainly entitled to an order from the court compelling that authority to respond, but the State’s delay did not entitle Mr. Fessenden to receive an order certifying his status to the Department.
 

 [4]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla. 1971).