[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13639
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2012
JOHN LEY
CLERK

D.C. Docket No. 8:09-cv-02043-VMC-TBM

GARY L. PERROT,

                                                              Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                                              Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 10, 2012)

Before EDMONDSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

    Gary L. Perrot, a Florida prisoner, appeals <u>pro se</u> the denial of his petition

for a writ of habeas corpus challenging his conviction of four counts of sexual battery. 28 U.S.C. § 2254; see Fla. Stat. § 794.011(3). We granted a certificate of appealability to resolve "[w]hether Perrot's counsel was ineffective for failing to object to the jury instruction, which allowed conviction under [section] 794.011(3) [of the Florida Statutes] if the jury found that Perrot had either used or threatened to use a deadly weapon or used actual physical force likely to cause serious personal injury, when the information charged only use of a deadly weapon." Because the decision of the Florida courts that Perrot's counsel acted effectively is not contrary to or an unreasonable application of clearly established federal law, we affirm.

## I. BACKGROUND

In 1995, Perrot was charged by criminal information for crimes related to his sexual abuse of his former girlfriend, Juanita Meeks. The information charged Perrot with tampering with a witness, id. § 914.22, kidnaping using a deadly weapon, id. § 787.01(1)(a)(3), and four counts of sexual battery, id. § 794.011(3). Each count of sexual battery alleged that "in the process" of the crime Perrot "use[d] or threaten[ed] to use a deadly weapon, to-wit: a knife." Id. Before trial, a Florida court granted the prosecutor's motion to nolle pros Perrot's charge of witness tampering.

2

During the trial in October 1996, Meeks testified that she was sexually battered by Perrot. Meeks testified that she began a romantic relationship with Perrot in March 1994 that ended in November 1995, but she agreed to visit him during the evening of Christmas Day. Meeks decided to spend the night after Perrot offered to sleep on the couch. After Meeks climbed into bed, Perrot handed her a letter stating that he was going to force her to have intercourse and would give her an ice water enema if she resisted. Meeks struggled with Perrot and poked him in the eye. Perrot "slammed his hand over [Meeks's] mouth" and threatened to beat her "within an inch of [her] life" if she continued. When Meeks resumed struggling, Perrot threatened to "go into the kitchen and get a knife to make you let me tie you." Meeks protested, and Perrot obtained a knife from a drawer in his nightstand and pressed the knife against Meeks's throat. Meeks grabbed the knife and cut her thumb. Meeks then asked Perrot if he would kill her, and Perrot responded, "I don't want to kill you. But you bet your sweet ass I'll kill you if you don't stop, if you don't let me tie your arms." Meeks relented, "got really quiet" and "did whatever [Perrot] said."

Meeks testified that Perrot bound her arms and legs and photographed her in various poses. For one of the poses, Perrot inserted an enema bottle in Meeks's rectum, but Perrot did not release the water. Later, Perrot loosened Meeks's

3

straps, performed oral sex on Meeks, and then forced Meeks to perform oral sex on him and have intercourse. Perrot eventually freed Meeks from her bonds, but she was too fearful to attempt an escape that evening.

Meeks testified that Perrot forced her the next morning to have intercourse a second time, and then Perrot permitted her to leave for work. Meeks met a friend and the two women went to a police station, where Meeks reported the abuse and the police recorded a telephone call from Meeks to Perrot. During the telephone call, Meeks twice mentioned that Perrot used a knife during the sexual abuse, and Perrot on several occasions asked Meeks if she was at a police station. When Meeks first asked Perrot why he put a knife to her neck, Perrot responded, "If you want to talk about anything, then come by and talk to me." Later, Meeks accused Perrot of putting a knife to her neck and threatening to kill her, and Perrot responded, "you know damn well that wasn't going to be the case." Perrot asked Meeks to return the letter that he had given her because he did not "think it's good to have it floating around."

Other evidence supported Meeks's version of events. A nurse testified that Meeks had a swollen upper lip and a half-inch cut on her left thumb. A police officer who searched Perrot's residence testified that he discovered blood on the sheets in Perrot's bedroom, and a forensic serologist testified that Meeks's blood

was on the sheets. Paula Robertson, a friend of Perrot's, testified that Perrot invited her to visit after the police searched his house and Perrot retrieved a bloodstained washcloth from his kitchen. Perrot told Robertson that Meeks was cut accidently after startling Perrot in the kitchen and they used the washcloth to remove blood from Meeks's clothes. Beth George, Perrot's former wife, testified that, when she visited Perrot to help him complete tax returns, he tied up George's arms and legs, put a gun in her mouth, and raped her.

The trial court granted Perrot a judgment of acquittal on the kidnaping charge on the ground that Meeks's confinement was integral to the sexual battery, but the trial court submitted the four charges of sexual battery to the jury. During closing arguments, Perrot argued that reasonable doubt existed about whether he had used a knife based on the failure of the police to recover a knife and the testimony that Meeks had cut her hand in the kitchen. In response, the prosecutor argued that the blood on Perrot's sheets, the cut on Meeks's thumb, and Perrot's tacit admission about using a knife proved that Perrot used a knife to sexually batter Meeks.

The trial court instructed the jury that the state was required to prove that, "in the process" of each sexual battery, Perrot "(a) used or threatened to use a deadly weapon; (b) used actual physical force likely to cause serious personal

5

injury." Perrot did not object to the jury instructions, but the prosecutor objected and argued that the instruction suggested incorrectly that it had to prove both means of force. The trial court agreed with the prosecutor, recalled the jury, and instructed the jury to insert an "or" between "used or threatened to use a deadly weapon" and "used actual physical force."

The jury convicted Perrot of the four counts of sexual battery. The verdict form read that the jury found Perrot guilty of "Sexual Battery with Great Force, as charged." The trial court sentenced Perrot to three concurrent terms of life imprisonment for his crimes involving the enema bottle, intercourse, and oral sex on Perrot. The trial court sentenced Perrot to a consecutive term of life imprisonment for the battery in which he performed oral sex on Meeks.

The court of appeals affirmed Perrot's convictions, but vacated his sentence to a consecutive term of imprisonment and remanded for resentencing. Perrot v. State, 712 So. 2d 797, 798 (Fla. Dist. Ct. App. 1998). On remand, the trial court sentenced Perrot to a concurrent term of life imprisonment. Later, Perrot had his sentences vacated on the ground that his sentencing guidelines had been declared unconstitutional, and Perrot received new sentences of four concurrent terms of 269 months of imprisonment. See Perrot v. State, 951 So. 2d 843 (Fla. Dist. Ct. App. 2007).

6

In 1999, Perrot moved for post-conviction relief under Florida Rule of Criminal Procedure 3.850. Perrot argued that trial counsel was ineffective for failing to object to the jury instruction. Perrot argued that his information did not charge him for committing battery using "actual force likely to cause serious personal injury," and that the jury would have acquitted him of sexual battery if counsel had objected and the jury had been instructed only about the use of a "deadly weapon" because the state failed to prove that he used the knife during any of the sexual activities. Perrot reasoned that the jury was unable to convict him for using a "deadly weapon" and instead convicted him of using "actual force."

The state court rejected Perrot's argument that his trial counsel had been ineffective. The state court ruled, based on the testimony from Meeks about "bec[oming] compliant . . . once [Perrot] threatened to use the knife to kill her," that "there was evidence that [Perrot] had threatened to use a deadly weapon in the course of the sexual battery." The court of appeals affirmed the ruling of the state court about the jury instruction but remanded for the trial court to address a different issue. Perrot v. State, 765 So. 2d 85, 85–86 (Fla. Dist. Ct. App. 2000). The trial court denied relief, and the court of appeals affirmed summarily. Perrot v. State, 919 So. 2d 448 (Fla. Dist. Ct. App. 2006).

Perrot later filed two other unsuccessful collateral challenges to his convictions. In November 2007, Perrot petitioned for a new appeal and argued that appellate counsel was ineffective, but the state courts denied relief summarily. Perrot v. State, 969 So. 2d 1031 (Fla. Dist. Ct. App. 2007). The next month, Perrot filed a motion for post-conviction relief that the state courts also denied summarily. Perrot v. State, 5 So. 3d 679 (Fla. Dist. Ct. App. 2009).

In 2009, Perrot filed in the district court a petition for a writ of habeas corpus raising 38 grounds for relief, including his argument that trial counsel had been ineffective for failing to object to the jury instruction. Perrot argued that the jury had returned a general verdict, which made it impossible to discern whether the jury had found him guilty of using "deadly weapon" or "actual force," and that both means of force were "disputed" at trial, but he had not been notified that he would have to defend against evidence about "actual force." Perrot argued that, had defense counsel objected, the "actual force" language would have been removed from the jury instructions, and he would have been acquitted because he presented evidence that Meeks had been cut while washing dishes.

In response, the state argued that Perrot "exhausted [his argument only] to the extent alleged . . . in his first state post-conviction motion" and the state courts reasonably applied clearly established federal law to deny relief. The state argued

8

that Perrot was not entitled to habeas relief because, "[a]s there was no error in the jury instructions, . . . counsel's performance cannot be deemed deficient for foregoing objection to the instruction"; the jury instruction was not erroneous because Perrot had notice of the "actual force" theory through his information, which referenced section 794.011(3); and Perrot was not prejudiced by the jury instruction because the evidence established that he used both a "deadly weapon" and "actual force" to sexually batter Meeks.

The district court denied Perrot's petition. The district court construed Perrot's petition to argue "that counsel should have objected because Perrot was not charged with using physical force likely to cause serious injury and had no notice of this element of the charged offenses." The district court ruled that the "state trial judge properly instructed the jury in accordance with the statute under which Perrot was charged in the information and in accordance with the appropriate standard jury instruction" and that "Parrot cannot demonstrate either that the information failed to apprise him of the applicable statute under which he was charged or that counsel had a basis upon which to object to the jury instruction."

## II. STANDARD OF REVIEW

We review <u>de novo</u> the denial of a petition for a writ of habeas corpus that alleges ineffective assistance of counsel. <u>Johnson v. Sec'y, DOC</u>, 643 F.3d 907, 929 (11th Cir. 2011). A petitioner is entitled to a writ of habeas corpus only if the state court reached a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court makes an "unreasonable application" of clearly established federal law only if the court " 'identifies the correct governing legal principle from [the] decisions [of the Supreme Court] but unreasonably applies that principle to the facts' of petitioner's case." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534–35 (2003) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000)). To prevail on an argument involving an unreasonable application of federal law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. ___, 131 S. Ct. 770, 786–87 (2011).

### III. DISCUSSION

Perrot must "[s]urmount[] [a particularly] high bar" to obtain a writ of habeas corpus based on ineffective assistance of counsel. Padilla v. Kentucky, 559 U.S. ____, 130 S. Ct. 1473, 1485 (2010). Perrot must not only prove that his counsel committed an error and that error was "so serious as to deprive [him] of a fair trial," Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), but he also must overcome the "doubly deferential" standard applied to the decisions of counsel in habeas corpus review. Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009). We are required to determine "not whether counsel's actions were reasonable[,]" but instead "whether there [was] any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S. Ct. at 788.

Perrot's claim of ineffective assistance fails. Perrot argued in the state courts that counsel was ineffective for failing to object to the jury instruction because the jury must have convicted Perrot of using actual force. The Florida courts reasonably concluded that Perrot's counsel would think that an objection to the jury instruction would fail "in [the] light of information then available to counsel." Premo v. Moore, 562 U.S. at ____, 131 S. Ct. 733, 741 (2011); see Strickland, 466 U.S. at 689, 104 S. Ct. at 2065 ("A fair assessment of attorney

11

performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). When Perrot was tried for sexually abusing Meeks, "it [was] settled [law in Florida] that 'the state [could] substantively amend an information during trial, even over the objection of the defendant, unless there [was] a showing of prejudice to the substantial rights of the defendant.'" Young v. State, 632 So. 2d 245, 246 (Fla. Dist. Ct. App. 1994) (quoting State v. Anderson, 537 So. 2d 1373, 1375 (Fla. 1989)). Based on the law that governed Perrot's trial, there was no reason for defense counsel to object to the jury instruction. The prosecutor had the right to amend Perrot's information because it "referenc[ed] section 794.011(3), which specifically define[d] all the elements of the offense," and did not "misle[a]d or embarrass[] [Perrot] in the preparation of his defense." DuBoise v. State, 520 So. 2d 260, 265 (Fla. 1988); see Fla. R. Crim. P. 3.140(o). Perrot's counsel did not render deficient performance. Moreover, Perrot suffered no prejudice. There was ample evidence that Perrot battered Meeks while using or threatening to use a deadly weapon. See Warren v. State, 635 So. 2d 122, 124 (Fla. Dist. Ct. App. 1994). As stated by the state court, Meeks's testimony that she "became compliant . . . once [Perrot] threatened to use the knife to kill her" established that "there was

12

evidence that [Perrot] had threatened to use a deadly weapon in the course of the sexual battery."

We **AFFIRM** the denial of Perrot's petition for a writ of habeas corpus.