MAKAR, J.
Appellant, Daniel John Levitan, challenges his conviction for grand theft in the second degree arising from the failed operation of his restaurant, Finnegan’s Wake Irish Pub (Finnegan’s). He argues the trial court erred in denying his motion for judgment of acquittal because the State’s evidence was legally insufficient under section 812.014, Florida Statutes, to show he either deprived or appropriated to the use of others not entitled to it, certain “property” belonging to Total Employee Leasing (TEL) as specified in the information. Viewing the evidence in the light most favorable to the State, we agree and reverse.
Appellant and his wife began operating Finnegan’s in 2007. The restaurant used the services of TEL, owned by Gene and Wayne Brown (the Browns), to process and manage its payroll as well as to provide workers’ compensation benefits, medical benefits, and 401k benefits. The terms of the agreement provided that those on Finnegan’s payroll were employees of TEL and, by its terms, TEL was obligated to pay them even if Finnegan’s failed to pay TEL. The Browns considered that both TEL and Finnegan’s were co-employers of the employees. Under its agreement with Finnegan’s, TEL directly paid the restaurant’s payroll, and upon delivery of those payroll checks, Finnegan’s would reimburse TEL for the checks and its services. Over the course of ten months, from September 2007 to July 2008, this arrangement was uneventful and resulted in payments totaling about $800-900,000 to TEL from Finnegan’s.
*778 During July 2008, TEL delivered payroll checks for two pay periods, totaling $67,754.69 to Finnegan’s restaurant workers. Appellant wrote one company check to TEL for payment on the first payroll, which was declined for insufficient funds when TEL attempted to deposit it; he later wrote another check to TEL for the second pay period, which was also declined for insufficient funds. At the time he wrote the checks, there was less than $300 in the restaurant’s operating account. TEL turned over the matter to the State Attorney’s Office (SAO). After some negotiations, which included the Levitan family offering to place a lien on some of their property (an offer the Browns rejected), TEL withdrew its criminal complaint when Appellant’s mother agreed to put $2500 of the debt on her personal credit card and Appellant agreed to pay the rest within thirty days. Appellant also signed a security agreement undertaking personal liability for the total debt owed. The State eventually dismissed the charges.
Appellant subsequently made a very small payment on the debt and gave an undated check to TEL for $62,688.55 — the remaining balance. Although no one at’ TEL remembers receiving the check, in November 2008 TEL deposited the check, but learned a stop-payment had been placed on it. At the time he wrote the check, Appellant had less than $100 in the operating account on which the check was drawn.
The matter was again referred to the SAO, which filed an information charging Appellant with grand theft of TEL’s property, which it defined as “U.S. Currency” of more than $20,000 but less than $100,000; importantly, the theft was alleged to have occurred between November 14, 2008, and November 20, 2008, i.e., when the undated check was written. Consistent with the information, the State’s theory at trial was that when Appellant wrote the undated check, which TEL attempted to deposit in November 2008, he knowingly and unlawfully obtained (or temporarily deprived TEL of) “currency” valued at $62,688.55, which was the property of TEL. Throughout the proceedings, however, the State maintained that the property at issue was misappropriated in July 2008 to the use of Finnegan’s employees who were not entitled to the funds because Appellant’s restaurant had not yet made payment to TEL. Appellant moved for judgment of acquittal, arguing that no theft of currency or other property occurred due to the issuance of the undated check in November as charged in the information. The trial court denied the motion. Appellant was convicted and sentenced as a habitual felony offender to imprisonment for five years and one day.
This court reviews de novo a trial court’s denial of a motion for judgment of acquittal. Jones v. State, 4 So.3d 687, 688 (Fla. 1st DCA 2009). Appellant was charged under section 812.014(1)(a)-(b), Florida Statutes, which provides:
(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit from the property.
(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.
Appellant claims that: (a) the State failed to establish he had felonious intent in issuing the undated check; (b) TEL was not deprived of a property right or that Appellant did not appropriate the property to his use or to the use of any person not entitled to it.; and (c) no theft of property *779 as defined and charged in the information occurred during November 2008. We agree with Appellant on the latter two points and therefore need not address the first.
We note preliminarily that the State’s closing argument conflated the two uncharged bad checks in July 2008 with the charge in the information that Appellant intentionally stole the consolidated debt via the undated November 2008 check in violation of section 812.014. No evidence was presented, however, that Appellant had criminal intent to steal from TEL in July 2008 when the two checks from the restaurant bounced. Nor was evidence presented that Appellant had criminal intent to steal from TEL when the preexisting debt underlying those two checks was consolidated via the negotiations and the initial threats of prosecution were made. Rather, the sole focus of this criminal case — as reflected in the information — was Appellant’s subsequent issuance of the undated check in November 2008, purportedly to deprive TEL of its property interest in the consolidated debt owed by Appellant at that time.
The State’s theory that Appellant took TEL’s “property” under section 812.014 when he issued the undated check deposited in November 2008, cannot be sustained because the record fails to show a deprivation of a property interest as defined in the information. Both below and on appeal, the nature of this property interest is ambiguous and in dispute. Based on the information, the stolen “property” at issue in this case is limited to the “U.S. Currency” of TEL, which the information charged was taken between November 14-20, 2008; indeed, the jury was instructed that Appellant must have “knowingly and unlawfully obtained or used or endeavored to obtain or use the U.S. currency” of TEL. The State’s theory at trial was that the issu-anee of the undated check in November 2008 operated as a taking of this property interest of TEL.
It is clear, however, that no “U.S. Currency” was taken from TEL in November 2008. In fact, no evidence exists that issuance of the undated check in November 2008 took or appropriated a defined property interest of TEL. Neither Appellant nor a third party appropriated or received currency or some additional benefit from the issuance of that check in November 2008. The restaurant employees already had been paid many months prior in July 2008 and the issuance of the November check did not deprive TEL of its contractual right to pursue collection of the preexisting debt owed. Neither the property interest defined in the information (i.e., “U.S.Currency”) nor the contractual right of TEL to seek collection of the consolidated debt that was renegotiated was taken by Appellant through the undated check issued in November 2008.
This case has persuasive similarities to Warren v. State, 635 So.2d 122 (Fla. 1st DCA 1994), in which an information charged a television station’s employee with stealing the station’s “United States Currency” by providing clients with free (but unauthorized) advertising in violation of section 812.014. The employee — who admitted he was not authorized to provide free services — received “no money or other consideration from the businesses, or any extra remuneration from his employer on account of the advertising in controversy.” Id. at 123. On appeal, he argued that no property interest of the station had been taken and a judgment of acquittal should have been entered.
Because it was conceded the employee did not take any currency as alleged, the State was left with claiming that some other vaguely-defined property of the sta *780 tion had been taken. In reversing the employee’s conviction, this Court noted:
the assistant attorney general suggested a range of possible subjects of theft, arguing that the conviction should be upheld on the basis, inter alia, of appellant’s having diminished his employer’s revenues. But the proof did not establish lost revenues, as opposed to increased expenses, and any such ‘currency’ never became the property of the supposed victim of the theft.
Id. at 124 (footnote omitted). Given the lack of proof of theft of a clearly defined property interest that was consistent with the charges in the information, this Court had no choice but to reverse. Id.
As in Warren, the State here tries to salvage Appellant’s conviction by attempting to define the property taken as within the framework of the charges in the information. At oral argument, the assistant attorney general articulated various property interests that Appellant is alleged to have taken. We sympathize -with the difficulty of attempting to do so in this case. It was equally challenging in Warren, in which this Court noted that “[e]ven now that the trial has concluded, the State has difficulty articulating with precision the basis for the conviction.” Id. at 124. As in Warren, we find the alleged property taken is equally unclear and thereby insufficient to sustain a conviction under section 812.014; a judgment of acquittal should have been entered.
In reaching our conclusion, we note that — absent fraud — business disputes involving contract breaches are not crimes for which incarceration is permissible; instead, their resolution lay primarily in our civil courts. See Art. I, § 11, Fla. Const (“No person shall be imprisoned for debt, except in cases of fraud.”); Stramaglia v. State, 603 So.2d 536, 537 (Fla. 4th DCA 1992) (“Alone, the fact that the subcontractors were entitled to be paid and were not paid cannot be determinative of whether their property was criminally taken.”) (citing Crawford v. State, 453 So.2d 1139 (Fla. 2d DCA 1984)); see also Harry V. Ball & Lawrence M. Friedman, The Use of Criminal Sanctions in The Enforcement of Economic Legislation: A Sociological View, 17 Stan. L. Rev. 197, 211 (1965) (“The noncriminal nature of breach of contract means that the initial decision to ‘punish’ a man who breaches his contract lies in the private sector and is, in fact, the exclusive decision of the man whose contract has been breached.”).
That society does not criminalize run-of-the-mill breaches of contracts, however, does not condone those involving more culpable conduct. Id. (“To say that breach of contract is not a crime is not a statement about the morality of breach of contract, though we may consider breach of contract highly immoral under certain circumstances.”). In this regard, section 812.014 plays an important role in both the civil and criminal justice systems by providing significant deterrents for fraudulent business conduct via treble damages in civil theft cases and felony sanctions (including incarceration) for criminal theft. Indeed, section 812.014 is not the only arrow in the State’s quiver. Florida’s worthless check statute, section 832.05, Florida Statutes, was enacted to provide criminal remedies that address “the evil” of knowingly passing checks and other instruments that wreak “mischief to trade and commerce.” § 832.05(1), Fla. Stat. (2012). Section 812.04 and section 832.05 work hand-in-glove; nothing precludes their use in conjunction against a defendant. See Perrin v. State, 599 So.2d 1365 (Fla. 1st DCA 1992) (defendant can be charged with grand theft and under worthless check statute).
*781 In reversing, we in no way condone Appellant’s conduct. We do so only because the one specific offense charged in the information under section 812.04 was not proven.
REVERSED.
WETHERELL, J., and WALLACE, WADDELL, Associate Judge, concur.