NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4816-14T2

PAUL KAMIENSKI,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

STATE OF NEW JERSEY,
DEPARTMENT OF THE
TREASURY,

     Defendant-Respondent/
     Cross-Appellant.

---

> **APPROVED FOR PUBLICATION**
>
> **August 16, 2017**
>
> **APPELLATE DIVISION**

---

Argued November 29, 2016 — Decided August 16, 2017

Before Judges Messano, Espinosa and Guadagno.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2106-10.

Timothy J. McInnis (McInnis Law) of the New York bar, admitted pro hac vice, argued the cause for appellant/cross-respondent (Law Office of Jerome A. Ballarotto, and Mr. McInnis, attorneys; Mr. Ballarotto and Mr. McInnis, on the brief).

Peter D. Wint, Assistant Attorney General, argued the cause for respondent/cross-appellant (Christopher S. Porrino, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Mr. Wint, on the briefs).

The opinion of the court was delivered by

ESPINOSA, J.A.D.

This case presents us with questions of first impression regarding the interpretation of provisions of the Mistaken Imprisonment Act (Act), N.J.S.A. 52:4C-1 to -7, relating to eligibility, the burden of proof, damages and "reasonable attorney fees" recoverable under the Act.

Plaintiff was charged in a single indictment and convicted of two counts of purposeful murder, felony murder, conspiracy to possess cocaine with intent to distribute and related offenses. His convictions for murder and felony murder were set aside after his petition for habeas corpus was granted. His drug conspiracy conviction remained undisturbed. Plaintiff was released from prison and commenced this action against defendant, State of New Jersey, Department of the Treasury (State), under the Act, seeking more than $6,000,000 in damages and $1 million in attorney fees. Plaintiff's appeal from the $433,230 judgment in his favor and the State's cross-appeal present us with questions of statutory interpretation, specifically (1) whether plaintiff was ineligible under N.J.S.A. 52:4C-6 because he was not an "innocent person" due to his drug conspiracy conviction, and (2) whether the decision granting plaintiff's habeas corpus petition satisfied his burden under N.J.S.A. 52:4C-3(b) to establish by clear and convincing

evidence "he did not commit the crime for which he was convicted" as a matter of law.  Because we conclude a remand is necessary, we also address how damages should be calculated under the Act prior to its 2013 amendment[1] and the reasonable attorney fees that may be recovered under N.J.S.A. 52:4C-5(b) to provide guidance to the trial court in the event such issues are reached on remand.

To recover under the Act, a claimant must

> establish the following by clear and convincing evidence:
>
> a. That he was convicted of a crime and subsequently sentenced to a term of imprisonment, served all or any part of his sentence; and
>
> b. He did not commit the crime for which he was convicted; and
>
> c. He did not commit or suborn perjury, fabricate evidence, or by his own conduct cause or bring about his conviction. Neither a confession or admission later found to be false shall constitute committing or suborning perjury, fabricating evidence, or causing or bringing about his conviction under this subsection; and
>
> d. He did not plead guilty to the crime for which he was convicted.
>
> [N.J.S.A. 52:4C-3.]

---

[1]  Because plaintiff was released from prison prior to the amendment of the Act in 2013, the Act as adopted in 1997 applies. N.J.S.A. 52:4C-7.  References to the Act as originally adopted will be made to L. 1997, c. 227.

I.

In November 1988, a jury convicted plaintiff of conspiracy to possess cocaine with intent to distribute, two counts of first-degree murder, and one count of felony murder. The trial judge entered a judgment of acquittal, notwithstanding the verdict, in favor of plaintiff on the murder and felony murder counts. Following appeal, we reinstated the murder convictions. State v. Kamienski, 254 N.J. Super. 75 (App. Div.), certif. denied, 130 N.J. 18 (1992). Plaintiff was resentenced and received two life sentences, with thirty years parole ineligibility, and a consecutive flat twelve-year term on the drug conspiracy conviction.

Plaintiff filed a habeas corpus petition, challenging only his murder convictions. The United States District Court denied his petition; the Court of Appeals for the Third Circuit reversed and ordered his petition be granted, stating, "no reasonable juror could conclude that the evidence admitted against [plaintiff] at his trial established that he was guilty of murder or felony murder beyond a reasonable doubt." Kamienski v. Hendricks, 332 Fed. Appx. 740, 740-41 (3rd Cir. 2009), cert. denied, 558 U.S. 1147, 130 S. Ct. 1168, 175 L. Ed. 2d 972 (2010). Plaintiff was released from prison in June 2009, after serving more than twenty years.

Plaintiff filed a verified complaint for compensation under

the Act, seeking $5,913,671.30 in damages and $1,000,000 in attorney fees and costs incurred in his initial defense on the charges at trial and all subsequent proceedings. The damages sought represented the amount of the adjusted gross income plaintiff earned in the year prior to his incarceration ($143,307) multiplied by the number of years he was incarcerated.

The State moved to dismiss the complaint, arguing plaintiff's drug conspiracy conviction rendered him ineligible for recovery pursuant to N.J.S.A. 52:4C-6(a). Plaintiff moved for declaratory relief, asking the court to adopt his proposed interpretation of the Act. The trial judge denied both the State's motion and plaintiff's motion for declaratory relief. The court denied plaintiff's motion for reconsideration and determined further that "reasonable attorney fees" under N.J.S.A. 52:4C-5(b) were limited to fees incurred in the compensation action.

Plaintiff moved for summary judgment, contending he was entitled to compensation under the Act as a matter of law. Paragraph 4 of the Statement of Material Facts submitted pursuant to Rule 4:46-2(a) states: "Plaintiff did not commit the murder crimes for which he had been convicted." The only support in the record cited for that statement is "March 4, 2011 hearing,"[2] the

---

[2] Pursuant to Rule 4:46-2(a), plaintiff was required to support this statement of material fact "with a citation to the portion

date of the trial court's decision denying the State's motion to dismiss. In opposition, the State admitted, "the United States Court of Appeals for the Third Circuit determined that there was insufficient evidence to support convictions of murder against the plaintiff" and asserted he failed to establish, by clear and convincing evidence, that he did not commit the murders.

The trial court granted plaintiff's motion for summary judgment and awarded him $343,000. Plaintiff's request for reasonable attorney fees, initially denied without prejudice, was later granted after a certification of services was submitted, resulting in an award of $90,230.

## II.

In his appeal, plaintiff argues the trial court erred in interpreting how damages are to be calculated and the scope of reasonable attorney fees under the Act, N.J.S.A. 52:4C-5(a)-(b). In its cross-appeal, the State argues the trial court erred in interpreting N.J.S.A. 52:4C-6(a), finding plaintiff was not barred from recovery under the Act. The State also argues the trial

---

of the motion record establishing the fact or demonstrating that it is uncontroverted," and such "citation shall identify the document and shall specify the pages and paragraphs or lines thereof or the specific portions of exhibits relied on." Plainly, plaintiff's citation did not comply with this rule, which alone, provides grounds for denying summary judgment. Ibid.

court erred in granting summary judgment to plaintiff, based upon a misinterpretation of N.J.S.A. 52:4C-3(b).

The interpretation of a statute is an issue of law, which we review de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012). Our "fundamental objective . . . is to identify and promote the Legislature's intent." Parsons ex rel. Parsons v. Mullica Twp. Bd. of Educ., 226 N.J. 297, 307 (2016). We look first to the "plain language chosen by the Legislature." State v. Gandhi, 201 N.J. 161, 176 (2010). "If the statutory language is clear and unambiguous, and susceptible to only one interpretation, courts should apply the statute as written without resort to extrinsic interpretive aids." In re Passaic Cty. Utils. Auth., 164 N.J. 270, 299 (2000).

When, as here, statutory provisions are susceptible to more than one interpretation, we look to extrinsic evidence to inform our analysis, "including legislative history and committee reports." Parsons, supra, 226 N.J. at 308 (quoting State v. Marquez, 202 N.J. 485, 500 (2010)); Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012). Extrinsic evidence is also properly considered "if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme." Ibid.; see also DiProspero v. Penn, 183 N.J. 477, 493 (2005); e.g., Perez v. Zagami, LLC, 218 N.J.

202, 214-16 (2014).

We are mindful that the Act is both remedial legislation and, in part, a waiver of sovereign immunity. Mills v. N.J. Dep't of the Treas., 435 N.J. Super. 69, 77 (App. Div.), certif. denied, 218 N.J. 273 (2014). These dual attributes bring competing standards into play for how the statute should be construed, liberally or strictly.

Other jurisdictions have not adopted a uniform approach in reviewing their own wrongful incarceration statutes. Many courts have expressed the view that their statutes should be construed liberally to effect their remedial purpose. See, e.g., State v. Hill, 125 So. 3d 1200, 1203 (La. Ct. App.) (interpreting La. Stat. Ann. § 15:572.8 (2017)), writ denied, 129 So. 3d 536 (La. 2013); Estate of Jerry Jacobs v. State, 775 S.E.2d 873, 876 (N.C. Ct. App.) (interpreting N.C. Gen. Stat. §§ 148-82 to -84 (2016)), review denied, 778 S.E.2d 93 (N.C. 2015); State v. Moore, 847 N.E.2d 452, 456 (Ohio Ct. App. 2006) (interpreting Ohio Rev. Code Ann. § 2743.48 (LexisNexis 2017)); Wilhoit v. State, 226 P.3d 682, 686 (Okla. 2009) (interpreting Okla. Stat. tit. 51, § 154(B) (2011)); State v. Oakley, 227 S.W.3d 58, 62 (Tex. 2007) (interpreting Tex. Civ. Prac. & Rem. Code Ann. §§ 103.001-154 (West 2011)); Larson v. State, 375 P.3d 1096, 1103 (Wash. Ct. App.) (interpreting Wash. Rev. Code Ann. §§ 4.100.010-.090 (West

2017)), <u>review denied</u>, 385 <u>P.</u>3d 117 (Wash. 2016).

Federal courts and courts from other jurisdictions have held their wrongful incarceration statutes should be strictly construed in favor of the State and against any waiver of sovereign immunity. <u>See, e.g.</u>, <u>Sykes v. United States</u>, 105 <u>Fed. Cl.</u> 231, 233 (Fed. Cl. 2012) (observing the federal unjust conviction and imprisonment statutes, 28 <u>U.S.C.A.</u> §§ 1495, 2513, have "always been strictly construed" (quoting <u>Vincin v. United States</u>, 468 <u>F.</u>2d 930, 933 (Ct. Cl. 1972))); <u>Fessenden v. State</u>, 52 <u>So.</u> 3d 1, 7 (Fla. Dist. Ct. App. 2010) (interpreting <u>Fla. Stat.</u> §§ 961.01-.07 (2017)); <u>Webb v. State</u>, 795 <u>N.Y.S.</u>2d 636, 637 (N.Y. App. Div. 2005) (interpreting <u>N.Y. Ct. Cl. Act</u> § 8-b (McKinney 2017)), <u>appeal denied</u>, 845 <u>N.E.</u>2d 468 (N.Y. 2006). Hawaii's statute states explicitly that it "shall be broadly construed in favor of the State and against any waiver of sovereign immunity." <u>Haw. Rev. Stat.</u> § 661B-6 (Supp. 2016). Taking a more nuanced approach, the California Court of Appeals stated the sections of its wrongful incarceration statute should be "construed, not strictly, but according to the fair import of their terms." <u>Ebberts v. State Bd. of Control</u>, 148 <u>Cal. Rptr.</u> 543, 546 (Cal. Ct. App. 1978) (interpreting <u>Cal. Penal Code</u> §§ 4900-4906 (West 2017)).

In interpreting the Act, we strive to discern the balance the Legislature intended to strike between the liberal construction

afforded remedial legislation "in favor of the persons intended to be benefited thereby," Berg v. Christie, 225 N.J. 245, 259 (2016) (quoting Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., 199 N.J. 14, 34 (2009)), and the more limited construction appropriate to the State's voluntary assumption of liability, cf. Davenport v. Borough of Closter, 294 N.J. Super. 635, 637 (App. Div. 1996) ("Under the [Tort Claims Act, N.J.S.A. 59:1-1 to 12-3], immunity is the norm, unless liability is provided for by the Act."); see also Deborah F. Buckman, Annotation, Construction and Application of State Statutes Providing Compensation for Wrongful Conviction and Incarceration, 53 A.L.R.6th 305, 325-26 (2010) (noting statutes attempt to balance the obligation to do justice with the responsibility to assure that public coffers are not overburdened by baseless claims).

## III.

We first consider the State's argument that plaintiff is not eligible to recover under the Act. The State moved to dismiss plaintiff's complaint on the ground that he was ineligible to pursue his claim pursuant to N.J.S.A. 52:4C-6(a), which states,

> A person serving a term of imprisonment for a crime other than a crime of which the person was mistakenly convicted shall not be eligible to file a claim for damages pursuant to the provisions of this act.

A-4816-14T2

The State concedes the language of this provision is susceptible to more than one interpretation and argues this provision must be read in light of the Legislature's stated purpose to provide a remedy for "innocent persons":

> The Legislature finds and declares that innocent persons who have been convicted of crimes and subsequently imprisoned have been frustrated in seeking legal redress and that such persons should have an available avenue of redress to seek compensation for damages. The Legislature intends by enactment of the provisions of this act that those innocent persons who can demonstrate by clear and convincing evidence that they were mistakenly convicted and imprisoned be able to recover damages against the State.
>
> [N.J.S.A. 52:4C-1 (emphasis added).]

The State contends a legislative intent to limit eligibility to "truly faultless persons" is reflected in the other subsection of the noneligibility provision. N.J.S.A. 52:4C-6(b) bars a claim for damages "if the sentence for the crime of which the person was mistakenly convicted was served concurrently with the sentence for the conviction of another crime." (Emphasis added).

"[W]hen construing a statute, we consider not only the provision in question, but the entire legislative scheme." Gonzalez v. Bd. of Educ. of Elizabeth Sch. Dist., 325 N.J. Super. 244, 253 (App. Div. 1999), certif. denied, 163 N.J. 77 (2000).

11

In its September 1996 Statement, the Senate Judiciary Committee noted amendments were adopted to "clarify[] that the bill is intended to cover only persons mistakenly convicted." S. Judiciary Comm., Statement to S. 1036 (Sept. 19, 1996). The Statement described the ineligibility provision, codified in N.J.S.A. 52:4C-6, stating:

> [A] person is not eligible to file a claim for damages under the act if he either: (1) is serving a term of imprisonment for a crime other than the crime of which he was mistakenly convicted; or (2) served a sentence for another crime concurrently with the sentence for the crime of which he was mistakenly convicted.
>
> [S. Judiciary Comm., Statement to S. 1036 (Sept. 19, 1996) (emphasis added).]

Neither here nor in any other provision does the Act limit eligibility to "truly faultless persons" whose only conviction is the one of which they are innocent. A claimant must file suit under the Act "within two years after his release from imprisonment, or after the grant of a pardon to him." N.J.S.A. 52:4C-4. The plain language bars persons who are currently serving a term of imprisonment for another crime during that two-year period and persons who served a term concurrently with the wrongful conviction.

The Act is silent regarding the specific circumstances here, where a claimant was charged in a single indictment with multiple

crimes, convicted of multiple crimes, sentenced to <u>consecutive</u> terms and later had one of those convictions remain intact after others were set aside.

A variety of approaches have been adopted by other states in setting the threshold for eligibility. New York requires a claimant to have all charges in the "accusatory instrument" be reversed and dismissed on specified grounds. <u>N.Y. Ct. Cl. Act</u> § 8-b(5)(c) (McKinney 2017); <u>see</u> <u>Chalmers v. State</u>, 668 <u>N.Y.S.</u>2d 227, 228 (N.Y. App. Div. 1998); <u>Pough v. State</u>, 582 <u>N.Y.S.</u>2d 590, 592 (N.Y. Ct. Cl. 1992), <u>aff'd</u>, 612 <u>N.Y.S.</u>2d 935 (N.Y. App. Div. 1994), <u>appeal denied</u>, 648 <u>N.E.</u>2d 793 (N.Y. 1995). Similarly, under the Vermont and Washington statutes, the claimant must prove he or she "did not engage in any illegal conduct alleged in the charging documents." <u>Vt. Stat. Ann.</u> tit. 13, § 5574(a)(3) (West 2017); <u>Wash. Rev. Code</u> § 4.100.040(2)(a) (West 2017); <u>see also</u> <u>Ala. Code</u> § 29-2-156 (2013) (plaintiff must be innocent of all felonies for which he or she was convicted).

Other states have required the claimant to provide proof of innocence of "any other felony arising out of or reasonably connected to the facts supporting the indictment or complaint, or any lesser included felony," <u>Mass. Gen. Laws</u> ch. 258D, § 1(C)(vi) (2017); "another criminal offense arising from the same transaction," <u>Mich. Comp. Laws.</u> § 691.1755(1)(b)) (2017);

13

"multiple charges arising out of the same behavioral incident," Minn. Stat. § 590.11, subdiv. 5(a)(2) (2018);[3] and lesser included offenses, Okla. Stat. tit. 51, § 154(B)(2)(e)(2) (2011).

Clearly, if our statute limited eligibility to persons who were exonerated on all charges in the indictment, as New York, Vermont and Washington do, plaintiff would not be eligible to recover under the Act. It is less certain whether his eligibility would be affected by the standards employed in the other statutes we have cited. Pursuant to the plain language of N.J.S.A. 52:4C-6, eligibility does not turn on proof of innocence on any charge other than the one or ones for which a claimant has been wrongfully convicted. Rather, the disqualifying criteria relate to the sentence(s) served by a claimant, and only address concurrent terms and terms that are being served at the time the complaint is filed. Thus, if a claimant has served a sentence that is concurrent to the sentence served for the wrongful conviction or is serving a sentence for another offense at the time of application, he is not eligible under the Act.

---

[3] Minnesota also requires claimants to show "the person was not serving a term of imprisonment for another crime at the same time, provided that if the person served additional time in prison due to the conviction that is the basis of the claim, the person may make a claim for that portion of time served in prison during which the person was serving no other sentence." Minn. Stat. § 590.11, subdiv. 5(a)(4) (2011).

Although it may seem counterintuitive that the imposition of a consecutive sentence inures to plaintiff's benefit, the absence of any disqualifier in the Act based on defendant's guilt on another charged offense or the consecutive sentence imposed supports the conclusion we reach that N.J.S.A. 52:4C-6 does not bar him from seeking compensation under the Act.

IV.

To recover under the Act, plaintiff must "establish . . . by clear and convincing evidence . . . [h]e did not commit the crime for which he was convicted." N.J.S.A. 52:4C-3(b). The State contends the court erred when it granted plaintiff's motion for summary judgment because the record lacks support for a finding that plaintiff proved subsection (b)[4] by clear and convincing evidence,[5] and the trial court's conclusion to the contrary rested upon a misinterpretation of N.J.S.A. 52:4C-3. We agree.

---

[4] The State also contends "a question of material fact remains as to whether [plaintiff's] conduct caused or brought about his murder convictions" under subsection (c), since he "took steps to facilitate a drug transaction" by introducing the victims to the co-defendants, and "was convicted of drug related offenses, which culminated in the homicides that gave rise to his murder convictions". This argument lacks sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

[5] Plaintiff argues the State abandoned this argument, based upon a statement by the deputy attorney general that "the crux of this case right now is the interpretative issue on all equated damages provision." This statement was made during oral argument on three motions: plaintiff's motion to strike the State's affirmative

A-4816-14T2

When we review a summary judgment order, we view the evidence "in the light most favorable to the non-moving party," Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)), to determine "if there is a genuine issue as to any material fact or whether the moving party is entitled to judgment as a matter of law," Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)). To meet that standard, the movant must present evidence sufficient to satisfy all the elements of his claim, measured by "the evidential standard governing that cause of action." Bhagat v. Bhagat, 217 N.J. 22, 40 (2014). In this case, our review requires us to interpret the elements of plaintiff's claim as set forth in N.J.S.A. 52:4C-3. Because this is a legal issue, we owe no deference to the trial court's conclusions. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012).

The trial judge found that N.J.S.A. 52:4C-3(b) did not require plaintiff to "prove his innocence." Observing "the federal appeals court said there was insufficient evidence to prove murder," she reasoned that the legislature did not intend to "put the onus on

defenses; plaintiff's motion for declaratory relief, seeking a declaration that plaintiff's interpretation of how damages are to be calculated is correct; and the State's motion to dismiss for failure to state a claim. We do not agree that this statement, taken out of context, constitutes a waiver of this argument.

him to prove his innocence." She concluded plaintiff "has met the requirements of the [Mistaken] Imprisonment Act and we are just talking about the amount of the damages."

On appeal, the State argues the Third Circuit's conclusion that the evidence was insufficient to sustain plaintiff's murder convictions did not equate with a determination there was clear and convincing evidence that plaintiff did not commit the crimes charged, as required by N.J.S.A. 52:4C-3(b). Again, we agree.

In the first instance, the decision by the Court of Appeals did not satisfy plaintiff's burden under N.J.S.A. 52:4C-3(b) as a matter of law. And, even if that decision were considered as support for plaintiff's claim, he has failed to show he is entitled to summary judgment.

The Legislature's stated "intent" is to provide redress for "those innocent persons who can demonstrate by clear and convincing evidence that they were mistakenly convicted and imprisoned." N.J.S.A. 52:4C-1 (emphasis added). From its first iteration, the Act has required a claimant to establish "by clear and convincing evidence" that "[h]e did not commit the crime for which he was convicted." L. 1997, c. 227, § 3(b). The Legislature described the burden of proof the claimant must satisfy as "substantial," and urged courts "in the interest of justice" to consider the "difficulties of proof" in exercising discretion "regarding the

17                                        A-4816-14T2

weight and admissibility of evidence submitted" by the claimant.
L. 1997, c. 227, § 1.  The plain language of the Act and its
legislative history thus both evince the Legislature's intent that
a claimant "prove" he did not commit the crime.

The burden of proof the Legislature elected for this cause
of action is clear and convincing evidence, the "intermediate
standard" between a preponderance of the evidence and proof beyond
a reasonable doubt.  2 McCormick on Evidence § 340 (Brown ed., 7th
ed. 2013).  "[A]dopting a 'standard of proof is more than an empty
semantic exercise.'"  Addington v. Texas, 441 U.S. 418, 425, 99
S. Ct. 1804, 1809, 60 L. Ed. 2d 323, 330 (1979) (citation omitted).
"The function of a standard of proof . . . is to 'instruct the
factfinder concerning the degree of confidence our society thinks
he should have in the correctness of factual conclusions for a
particular type of adjudication.'"  Id. at 423-24 (quoting In re
Winship, 397 U.S. 358, 370, 90 S. Ct. 1068, 1076, 25 L. Ed. 2d
368, 379 (1970) (Harlan, J., concurring)).

Like plaintiffs in other actions where such proof is
required,[6] plaintiff was required to satisfy each of the elements

_____

[6]   See Bhagat, supra, 217 N.J. at 46-47 (holding clear and
convincing standard applies to father seeking to rebut a
presumption of a gift to an adult child and noting that standard
applies to: termination of parental rights, Santosky v. Kramer,
455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); N.J. Div.
of Youth & Family Servs. v. A.W., 103 N.J. 591, 611-12 (1986);

of his cause of action by presenting evidence that met the standard

defined in our Model Jury Charge:

> Clear and convincing evidence is evidence that produces in your minds a firm belief or conviction that the allegations sought to be proved by the evidence are true. It is evidence so clear, direct, weighty in terms of quality, and convincing as to cause you to come to a clear conviction of the truth of the precise facts in issue.
>
> The clear and convincing standard of proof requires that the result shall not be reached by a mere balancing of doubts or probabilities, but rather by clear evidence which causes you to be convinced that the allegations sought to be proved are true.
>
> [Model Jury Charge (Civil), 1.19, "Burden of Proof — Clear and Convincing Evidence" (2011).]

Plaintiff's only support for his claim that he did not commit

the crimes in question is the opinion by the Court of Appeals that

---

involuntary commitment of a person to a psychiatric facility, Addington, supra, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323; commitment pursuant to the Sexually Violent Predator Act, In re Commitment of W.Z., 173 N.J. 109 (2002); decision to withhold life sustaining treatment from a person in a persistent vegetative state, Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 284, 110 S. Ct. 2841, 2854, 111 L. Ed. 2d 224, 245-46 (1990); decision to withhold life sustaining treatment from an incompetent nursing home patient, In re Conroy, 98 N.J. 321, 382 (1985); in disciplinary proceedings against an attorney or a doctor, In re Rachmiel, 90 N.J. 646, 661 (1982); In re Polk License Revocation, 90 N.J. 550, 563 (1982); and to prove fraud, Fox v. Mercedes-Benz Credit Corp., 281 N.J. Super. 476, 484 (App. Div. 1995)).

ordered the issuance of a writ of habeas corpus, which was relied upon by the trial court in denying the State's motion to dismiss.

Even when habeas relief is granted because the State failed to meet its much higher burden to prove guilt beyond a reasonable doubt, the order does not prove the petitioner is innocent[7] or restore the petitioner to a presumption of innocence that is transferable to the civil action.[8] Unless the habeas court makes

---

[7] See, e.g., Doss v. State, 985 N.E.2d 1229, 1231-35 (Ohio 2012). Although the Ohio statute required only proof by a preponderance of the evidence, the Ohio Supreme Court held the fact the plaintiff's conviction was vacated on the ground the state failed to prove his guilt was insufficient to satisfy his burden "to affirmatively establish his innocence." Id. at 1234. ("[A] vacation of Doss's conviction does not prove his innocence."); see also Fessenden, supra, 52 So. 3d at 7 ("[A]n order vacating a conviction and sentence based on the legal ruling of this court is not an order 'based upon exonerating evidence.'" (quoting Fla. Stat. § 961.03 (2017))); Burrell v. State, 184 So. 3d 246, 254 (La. Ct. App.) ("Merely showing there is lack of credible evidence to support a conviction is insufficient to meet the [plaintiff's] burden" to prove "by clear and convincing scientific or non-scientific evidence that he is factually innocent of the crime for which he was convicted." (second quotation quoting La. Stat. Ann. § 15:572.8 (2017))), writ denied, 206 So. 3d 879 (La. 2016); Piccarreto v. State, 534 N.Y.S.2d 31, 32 (N.Y. App. Div. 1988) ("[I]nability of the [state] to meet [its] burden in a criminal trial" does not satisfy claimant's burden to "state facts in sufficient detail to permit the court to find that he is likely to succeed at trial in proving that [he or she] did not commit the acts charged in the accusatory instrument.").

[8] See, for example, Hess v. State, 843 N.W.2d 648, 651-53 (Neb. 2014), where, after his murder conviction was reversed, the plaintiff, who was required to prove he was innocent of the crime by clear and convincing evidence, argued he could rely upon a presumption of innocence and that the state was required to prove his guilt. The court rejected this assertion, holding the Nebraska

a finding that a claimant was actually innocent, its findings have limited probative value.[9]

A review of the Court of Appeals' decision reveals it falls short of providing clear and convincing evidence that plaintiff did not commit the murders.  The State's theory regarding the murders was that plaintiff was one of two accomplices to the actual

---

statute requires both legal innocence and actual innocence, which means "a defendant did not commit the crime for which he or she is charged."  Id. at 653.  The court observed that the presumption of innocence pertains only to legal, not actual, innocence, and has no bearing on the requirement that the plaintiff prove actual innocence.  Ibid.

[9]  Some statutes require a specific judicial finding or order as a pre-requisite to pursuing a claim.  See, e.g., Fla. Stat. § 961.02(4) (2017) (requiring an order issued by the original sentencing court finding that the person did not commit "the act nor the offense that served as the basis for the conviction and incarceration and that the person did not aid, abet, or act as an accomplice or accessory to a person who committed the act or offense"); Haw. Rev. Stat. § 661B-1(b)(1) (Supp. 2016) (petitioner must allege that either "(1)[t]he judgment of conviction was reversed or vacated because the petitioner was actually innocent of the crimes for which the petitioner was convicted, and the court decision so states; or (2) [t]he petitioner was pardoned because the petitioner was actually innocent of the crimes for which the petitioner was convicted and the pardon so states" (emphasis added)); Me. Stat. tit. 14, § 8241(2)(C) (2016) (claimant must receive "a full and free pardon" with "a written finding by the Governor . . . that the person is innocent of the crime for which [he or she] was convicted"); Md. Code Ann., State Fin. & Proc. § 10-501(b) (LexisNexis 2014) (claimant must have "received from the Governor a full pardon stating that the individual's conviction has been shown conclusively to be in error"); N.Y. Ct. Cl. Act § 8-b(3)(b)(i) (McKinney 2017) (when a claim is based upon the grant of a pardon, the pardon must be "upon the ground of innocence").

A-4816-14T2

shooter, co-defendant Joseph Marsieno. The Court of Appeals noted there was "overwhelming evidence" that plaintiff introduced the victims to his co-defendants and "brokered a cocaine sale" between them, and "more than sufficient evidence to allow the jury to conclude that [plaintiff] was involved in disposing of the [victims'] bodies and covering up their murders." Kamienski, supra, 332 Fed. Appx. at 748-49. The Court of Appeals also observed that the jury had rejected plaintiff's sworn denials of involvement in the drug deal. Id. at 748. Relief was granted because the State failed to identify "any direct or circumstantial evidence that would allow a reasonable jury to conclude that [plaintiff] knew of Marsieno's intent to rob and/or murder the [victims] before Marsieno shot them." Id. at 749.

Although the Court of Appeals commented on the lack of evidence to prove essential elements of the murder charges as well as certain concessions made by the prosecutor during the trial, it is clear the court's conclusion that a writ of habeas corpus must be issued was based on reasoning that the evidence failed to prove plaintiff's guilt beyond a reasonable doubt and did not include any declaration that he was factually innocent. In short, it can be characterized as a finding of legal innocence but not actual innocence. This was an insufficient basis upon which to award summary judgment to plaintiff.

For guidance in the event that plaintiff proves the elements of his claim by clear and convincing evidence on remand, we address plaintiff's argument regarding the calculation of damages. The damages provision of the Act applicable to plaintiff's claim provided:

> Damages awarded under this act shall not exceed twice the amount of the claimant's income in the year prior to his incarceration or $20,000.00 for each year of incarceration, whichever is greater.
>
> [L. 1997, c. 227, § 5(a).]

To arrive at the damages awarded plaintiff, the trial court determined that plaintiff served approximately three years of his twelve-year drug conspiracy sentence and multiplied $20,000 by 17.2 years.[10] Plaintiff does not dispute the court's calculation of "net" damages by reducing 20.6 years to 17.2 years. He argues the trial court erred in multiplying the number of years of incarceration by $20,000 rather than by the amount he earned in the year prior to his incarceration. We disagree.

Plaintiff concedes the language of the damages provision in the 1997 version of the Act is ambiguous, and argues it should be

---

[10] The award of $343,000 appears to be a mathematical error.

interpreted as if L. 1997, c. 227, § 5(a) included the underlined language:

> Damages awarded under this act shall not exceed twice the amount of the claimant's income in the year prior to his incarceration <u>for each year of incarceration</u> or $20,000.00 for each year of incarceration, whichever is greater.

To support this interpretation, plaintiff presented an expert opinion from an English professor, who offered an interpretation of the statute based upon grammatical principles. "[P]unctuation, though important, is not decisive of legislative intent." Perez, supra, 218 N.J. at 215. Moreover, this opinion was entitled to no deference either in the trial court or on appeal. The purpose of expert testimony is to assist the trier of fact regarding the significance of evidence. N.J.R.E. 702. An expert's opinion on a question of law is neither appropriate nor probative. Boddy v. Cigna Prop. & Cas. Cos., 334 N.J. Super. 649, 659 (App. Div. 2000); Healy v. Fairleigh Dickinson Univ., 287 N.J. Super. 407, 413 (App. Div.), certif. denied, 145 N.J. 372, cert. denied, 519 U.S. 1007, 117 S. Ct. 510, 136 L. Ed. 2d 399 (1996); see also L & L Oil Serv., Inc. v. Dir., Div. of Taxation, 340 N.J. Super. 173, 182 (App. Div. 2001). It is the exclusive province of the court to decide questions of law, Russo v. Bd. of Trs., Police & Firemen's Ret.

<u>Sys.</u>, 206 <u>N.J.</u> 14, 27 (2011), such as the interpretation of a statute.

Turning to principles of statutory construction, "the doctrine of the last antecedent . . . holds that, unless a contrary intention otherwise appears, a qualifying phrase within a statute refers to the last antecedent phrase."[11]  <u>State v. Gelman</u>, 195 <u>N.J.</u> 475, 484 (2008); <u>see also</u> Singer & Singer, <u>supra</u>, § 47.33 at 494. ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent."). Because the Legislature did not separate the qualifying phrase "for each year of incarceration" from $20,000 with a comma, the doctrine of last antecedent provides support for the interpretation that "for each year of incarceration" applies only to $20,000.  <u>Cf.</u> <u>Gudgeon v. Cty. of Ocean</u>, 135 <u>N.J. Super.</u> 13, 17 (App. Div. 1975) (noting that where a comma sets off a modifying phrase from previous phrases, the modifying phrase applies to all previous phrases).

But, more persuasive is the Legislature's own understanding of the damages provision, as clearly set forth in the legislative history for the 2013 amendments.  Although the amendment itself does not govern plaintiff's claim, the Legislature's statements

---

[11]  "The last antecedent is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.'"  2A Norman J. Singer & Shambie Singer, <u>Statutes and Statutory Construction</u> § 47.33 at 494-97 (7th ed., rev. 2014).

about the amendment and comparison to the corresponding language in the Act as originally adopted provide invaluable insight into the Legislature's intent. Our Supreme Court has recognized the usefulness of an amendment that clarifies, rather than modifies, a statute as a "tool to determine the intent behind the original enactment." State v. Schubert, 212 N.J. 295, 314 (2012); e.g., D.W., supra, 212 N.J. at 250 (considering "[b]oth the plain language and historical evolution of" the New Jersey Parentage Act, N.J.S.A. 9:17-38 to -59, to glean legislative intent); see also Red Lion Broad. Co. v. FCC, 395 U.S. 367, 380-81, 89 S. Ct. 1794, 1801, 23 L. Ed. 2d 371, 383 (1969) ("Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction.").

In 2013, the Legislature adopted several amendments to the Act, including amendments to N.J.S.A. 52:4C-5, the provision that defines damages.[12] See L. 2013, c. 171. Pertinent to our

---

[12] Another amendment reflected a legislative intent to limit damages. The original language in the statement of legislative findings stated it was the Legislature's intent to provide "an available avenue of redress over and above the existing tort remedies to seek compensation for damages." L. 1997, c. 227, § 1 (emphasis added). In 2013, N.J.S.A. 52:4C-1 was amended to delete the underlined language. See L. 2013, c. 171, § 1. A corresponding amendment was made to N.J.S.A. 52:4C-2, stating any award of damages in an action against the State, any

consideration is the restructured definition of the ceiling for damages:

> Damages awarded under this act shall not exceed the greater of:
>
> (a) twice the amount of the claimant's income in the year prior to his incarceration; or
>
> (b) $50,000 for each year of incarceration.
>
> [N.J.S.A. 52:4C-5(a)(1).]

The Senate Judiciary Committee Statement clarifies that this amendment did not change the way in which the ceiling for damages is determined:

> As to damages for eligible claimants, under current law, damages cannot exceed twice the amount of the claimant's income in the year prior to the claimant's incarceration or $20,000 for each year of incarceration, whichever is greater. The bill does not alter this measurement between the greater of income in the year prior to the claimant's incarceration or the total per year amount for each year of incarceration, but this latter amount would be calculated at $50,000 per year instead of the current $20,000 per year.
>
> [S. Judiciary Comm., Statement to S. 1219 (June 21, 2012) (emphasis added).]

_____

political subdivision or employee of the same regarding "the same subject matter shall be offset by any award of damages under [the] act." L. 2013, c. 171, § 2.

The Senate Budget and Appropriations Committee, the Assembly Judiciary Committee and the Assembly Appropriations Committee all issued statements regarding the amendment that used identical language in describing the change made by the amendment. See S. Budget and Appropriations Comm., Statement to S. 1219 (Oct. 1, 2012); Assemb. Judiciary Comm., Statement to S. 1219 (Dec. 10, 2012); Assemb. Appropriations Comm., Statement to S. 1219 (Feb. 7, 2013).

The legislative history thus presents compelling support for the conclusion that the Legislature never intended an award of damages to be based on the calculation urged by plaintiff. We conclude that, even as originally drafted, the damages provision defined two caps to a claimant's recovery. Under one scenario, he would receive twice the amount he earned in the year prior to his incarceration. The other scenario allowed recovery of an amount calculated by multiplying the years of incarceration by $20,000. The successful claimant is entitled to the greater amount arrived at by either calculation. Therefore, in the event plaintiff is awarded damages following the remand, his recovery will be calculated accordingly.

VI.

Finally, we turn to plaintiff's challenge to the calculation of the attorney fee award, an issue that need only be addressed

in the event plaintiff prevails on remand. Plaintiff sought $1 million in fees, an amount that included all fees incurred from the trial, direct appeal, habeas corpus petition and appeal, as well as the instant litigation. The trial court determined he was entitled only to reasonable attorney fees incurred in the instant litigation.

New Jersey follows the "American Rule," which requires litigants to bear their own litigation costs, regardless of who prevails. Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016). Nonetheless, "a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001).

The provision of the Act applicable to plaintiff's claim[13] stated:

---

[13] Subsection (b) was amended in 2013 to state:

> In addition to the damages awarded pursuant to subsection a., the claimant shall be entitled to receive reasonable attorney fees and costs related to the litigation. A claimant may also be awarded other non-monetary relief as sought in the complaint including, but not limited to vocational training, tuition assistance, counseling, housing assistance, and health insurance coverage as appropriate.
>
> [L. 2013, c. 171, § 4 (codified at N.J.S.A. 52:4C-5(b)).]

> In addition to the damages awarded pursuant to subsection a., the claimant shall be entitled to receive reasonable attorney fees.
>
> [L. 1997, c. 227, § 5(b).]

Plaintiff argues the statute is silent as to whether "reasonable attorney fees" are limited to the fees incurred in the civil action or extends to all fees related to the criminal prosecution. He contends the Legislature did not anticipate that an exonerated person would have the resources to pay for his own defense from trial through applications for post-conviction relief and that, if it had, it would have intended to include all fees in order to "compensate" such persons "for the damages they suffered because of their wrongful imprisonment." We disagree.

In the first instance, the statute is not silent on this issue. Any attorney fee award is made "[i]n addition to the damages awarded pursuant to subsection a." The argument that such fees must include fees for services related to the criminal prosecution conflates the concepts of damages and an award for "reasonable attorney fees."

We are satisfied that if the Legislature intended to compensate a successful complainant for fees related to the underlying criminal prosecution, it would have stated so as a component of recoverable damages in subsection (a) or stated explicitly that "reasonable attorney fees" had a different meaning

than it has historically employed in other statutes with fee-shifting provisions.[14]

"The Legislature is presumed to be familiar with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose." In re Petition for Referendum on City of Trenton Ordinance 09-02, 201 N.J. 349, 359 (2010) (citation omitted). In light of this principle, we note that, in 2013, the Legislature amended the Public Defender Act, N.J.S.A. 2A:158A-1 to -25, to provide additional relief to a defendant who is awarded damages under the Mistaken Imprisonment Act "on grounds that the defendant did not commit the crime for which he was convicted and imprisoned." The amendment required the Public Defender to "discharge any lien for services rendered concerning that crime." N.J.S.A. 2A:158A-17(b) (emphasis added). Although there were amendments to the Act as well in 2013, there was no corresponding clarification or modification to the Act to state that "reasonable attorney fees" included fees for services concerning the criminal prosecution.

---

[14] See, e.g., the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -206, and the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49.

A-4816-14T2

Therefore, in the absence of any legislative language to the contrary, we conclude that "reasonable attorney fees" recoverable under the Act are limited to those incurred in the successful pursuit of the civil claim.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION