**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3809-21

SERGIO AMOEDO and KAREN
DALY AMOEDO, his wife,
PETER P. BARNA, the ESTATE
of VINCENT BEAVER, by and
through his EXECUTRIX
MAUREEN BEAVER, BARRY
BLANCHARD and KAREN
O'HARA, his wife, ELIZABETH
CRILLEY, PHILIP DELUCA and
MARLENE DELUCA, his wife,
DOUGLAS FOLEY and DEBORAH
FOLEY, his wife, ESTATE OF
DONALD HOWARD by and
through his EXECUTOR,
ERNEST HOWARD, GARY
JOHNSTON and MARY JOHNSTON,
his wife, FRANK T. JONES, SR.,
PATRICIA LEMOINE
and STEVEN LEMOINE, her
husband, STEVE LEWIS and
JOANNE LEWIS, his wife, JILL
BUTLER MULE and JOSEPH
MULE, her husband, MICHAEL
NITTOLO and ADRIENNE
NITTOLO, his wife, JEFFREY
READER and DEBORAH READER,
his wife, WALTER SAMEDI and
his wife, MIYANTA SAMEDI,
JOSEPH SCARANO and JUDITH

SCARANO, his wife,

Plaintiffs-Appellants,

v.

HEALTH CAROUSEL, LLC,
and NEXT MEDICAL STAFFING,
LLC,

Defendants-Respondents,

and

OSTEO RELIEF INSTITUTE, JOHN J.
RUSH, M.D., as Chief Medical and
Compliance Officer of the OSTEO
RELIEF INSTITUTE, MEDICAL OFFICES
OF NEW JERSEY SHORE, LLC, MARVIN
L. SWANSON, M.D., as authorized official
of MEDICAL OFFICES OF NEW JERSEY
SHORE, LLC, OSTEO RELIEF INSTITUTE
OF JERSEY SHORE, PC, IGAL DUBOV,
D.C., as President of OSTEO RELIEF
INSTITUTE OF JERSEY SHORE, PC,
OSTEO RELIEF INSTITUTE OF NJ, LLC,
ANTIGRAVITY EFFECTS, LLC,
HOMAS C. ROSS, individually, and as
Managing Member of ANTIGRAVITY
EFFECTS, LLC, KATHERINE M. ROSS,
individually and as a member of ANTIGRAVITY
EFFECTS, LLC, MATHIAS H. BERRY,
individually and as agent, servant, and
member of ANTIGRAVITY EFFECTS,
IGAL DUBOV, D.C., as medical provider,
agent, owner, and/or employee of OSTEO
RELIEF INSTITUTE OF NJ, LLC,
MARIAM RUBBANI, M.D., MARVIN L.

2

SWANSON, M.D., and JOHN J. RUSH, M.D.,

    Defendants.

_____

Submitted November 6, 2023 – Decided February 7, 2025

Before Judges DeAlmeida, Berdote Byrne, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1754-17.

Shebell & Shebell, LLC, attorneys for appellants (Thomas F. Shebell, III, of counsel; John H. Sanders, II and Christian R. Mastondrea, on the briefs).

Buckley Theroux Kline & Cooley, LLC, attorneys for respondents Next Medical Staffing, LLC and Health Carousel, LLC (Sarah A. Buckley and Charles A. Shadle, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiffs appeal from the June 29, 2022 order of the Law Division granting summary judgment to defendants Next Medical Staffing, LLC (Next Medical) and Health Carousel, LLC (Carousel) in this medical malpractice and negligence action. We affirm.

3

A-3809-21

I.

This matter arises from a cluster of knee infections that appeared in March 2017 after patients with preexisting osteoarthritis received knee injections at defendant Osteo Relief Institute (ORI) in Wall. At that time, ORI was operated by defendant Osteo Relief Institute of New Jersey, LLC (ORINJ) and defendant Medical Offices of New Jersey Shore, LLC (MONJS). Defendant Igal Dubov, D.C., a licensed chiropractor, owned ORINJ and defendant John Rush, M.D., owned MONJS at the time of the infectious outbreak. Pursuant to a contract between the owner entities, ORINJ provided administrative and management services to ORI, and MONJS was responsible for employing physicians and other professionals to provide medical services to the patients of ORI.

ORI had a professional relationship with defendant Next Medical, a temporary medical services staffing agency. Defendant Carousel became Next Medical's parent company in 2015.[1] Next Medical has no ownership interest in ORI or authority to control or influence its operations or the provision of medical care by ORI employees.

---

[1] Unless necessary for the sake of clarity, we refer to Next Medical and Carousel collectively as Next Medical, given that Carousel is named as a defendant only in its capacity as Next Medical's parent company.

A-3809-21

Under its business model, Next Medical receives job order requests from hospitals, private medical practices, and other medical facilities for temporary placement of healthcare professionals. Next Medical does not employ the healthcare professionals it places with its clients. They work as independent contractors and may pursue any employment they wish apart from the work they are assigned by Next Medical. Once a healthcare professional is placed with a client, Next Medical has no control or supervision over the healthcare professional's provision of medical services. Next Medical does not perform credentialing of physicians, examine the credentials of its clients, or engage in the practice of medicine. When a client signs an agreement with Next Medical for temporary staffing placement, the client attests to having met applicable compliance standards for its practice in the state in which it is operating.

The relationship between Next Medical and ORI began when Dubov contacted Next Medical seeking placement of a temporary physician to work at ORI. He represented himself to be the owner of ORI's practice. Next Medical made no inquiry into ORI's corporate structure or the legality of physician candidates treating patients under the supervision of a chiropractor. Dubov executed an agreement for temporary staffing placement with Next Medical. During the course of their professional relationship, Next Medical referred

5

physician candidates to Dubov, who conducted interviews and selected who would work at ORI. Next Medical was not the exclusive source of staffing for ORI. There were several occasions where Next Medical presented a physician for consideration to Dubov only to be informed that he had already filled the position.

In March 2015, Next Medical referred defendant Mariam Rubbani, M.D., to Dubov for placement at ORI. Rubbani executed a medical director services agreement with MONJS naming her medical director at ORI for a fifty-two week period. She provided those services as an independent contractor. In August 2015, MONJS bought out Rubbani's contract and permanently appointed her to a position at ORI as an employee.

In October 2016, Dubov contacted Next Medical stating ORI needed a physician to replace Rubbani. Next Medical recommended a replacement physician, Dr. Carol Skipper. ORI agreed to Skipper's temporary placement at ORI, where she worked as an independent contractor from September 2016 to February 2017. Although Dubov originally stated he needed to replace Rubbani, she continued to work at ORI during and after Skipper's placement.

At her deposition, Skipper testified she relied completely on Dubov and other staff members at ORI for handling and scheduling patients, cleaning

protocols, and medical preparations. She performed injections on thirty to forty patients a day. According to Skipper, "all [she] basically had to do was go from room . . . to room . . . and perform the injection." She testified that because there were no sinks in patient treatment rooms, she did not wash her hands between patients, but tried to do so every three to four patients in a bathroom. Skipper did not wear a mask while injecting patients, nor did ORI provide her any written policies or procedures regarding infectious disease prevention, patient safety, or hand hygiene.

In March 2017, at least fifty-three patients developed knee joint infections from injections they received at ORI. The Department of Health investigated the cause of the infectious outbreak. The agency documented several breaches in fundamental aseptic protocols at ORI, including: untimely removal of syringes and needles from sterile packages in advance of procedures (at times up to four days); the use of single-dose medication containers for more than one patient; storage of multiple-dose and open single-dose medication containers in the immediate patient care area; failure to have written infection prevention policies; failure to have proper registered disinfectant wipes; failure to have alcohol-based hand sanitizer in patient treatment areas and throughout the office; failure to routinely practice hand hygiene before medication preparation,

A-3809-21

before donning gloves, and after removing gloves; and failure to have written environmental cleaning and disinfection policies or procedures.

Skipper was not working at ORI at the time of the infectious outbreak. Only Rubbani, by then an ORI employee, was performing injections at ORI when the infectious outbreak arose. At the time that the infectious outbreak arose, no physician staffed through Next Medical was working at ORI.

Plaintiffs filed complaints in the Law Division alleging they were infected during the outbreak at ORI as the result of negligent medical treatment and practices.[2] They alleged medical malpractice and negligence against ORI and related entities, principals of those entities, and the medical professionals who treated them. Those claims were resolved and are not presently before this court. Plaintiffs also named Next Medical and Carousel as defendants, alleging medical malpractice and negligence resulting in their knee infections.

After discovery, Next Medical and Carousel moved for summary judgment. They argued: (1) the core of plaintiffs' complaints was their medical malpractice claims, but because Next Medical did not practice medicine those claims were not viable; (2) no healthcare professional who treated plaintiffs at

---

[2] Plaintiffs also include the spouses and estate representatives of ORI patients. The seventeen complaints filed by plaintiffs were consolidated for purposes of the summary judgment motion that gave rise to this appeal.

the time the infectious outbreak arose was employed by or under the control of Next Medical, negating any claims of medical malpractice or negligence; (3) Next Medical could not be liable under a theory of vicarious or direct liability because at the time the infectious outbreak arose there was no physician staffed at ORI through Next Medical; (4) claims of corporate negligence in the provision of medical care are not applicable to a temporary medical services staffing agency; (5) plaintiffs did not have standing to allege violations of the corporate practice of medicine doctrine under the Insurance Fraud Protection Act (IFPA), N.J.S.A. 17:33A-1 to -30, or N.J.A.C. 13:35-6.16, because those authorities do not create a private cause of action; (6) Next Medical owed no duty of care to plaintiffs; (7) plaintiffs failed to produce an expert report addressing the duties of temporary medical service staffing agencies for healthcare professionals; and (8) plaintiffs could not prove any act or omission of Next Medical was the proximate cause of their infections.  Plaintiffs opposed the motion.

On June 29, 2022, Judge Kathleen A. Sheedy issued a comprehensive twenty-eight-page written decision granting Next Medical and Carousel's motion for summary judgment and dismissing all claims against them.  The judge found Next Medical owed no duty of care to plaintiffs.  While

9

acknowledging "that there is a general foreseeability that an individual may be injured while being provided medical services," the judge concluded Next Medical's connection to the medical services provided to plaintiffs by ORI and Rubbani was too tenuous to create a duty of care. The judge noted Next Medical is not a healthcare provider, had no contact with plaintiffs, played no role in their medical treatment, and had no legal relationship with plaintiffs from which a duty of care might arise.

The judge also rejected plaintiffs' claims of respondeat superior liability. The judge found Next Medical did not and could not control how the physicians they placed at ORI provided medical treatment to plaintiffs. Those physicians, the judge noted, were not employees of Next Medical, and Rubbani, the only physician administering injections at the time of the outbreak, was employed by ORI. The judge rejected plaintiffs' argument that Next Medical retained sufficient control over the physicians it placed at ORI to create an employer/employee relationship, finding instead the physicians were independent contractors when working on an assignment from Next Medical.

The judge also noted N.J.A.C. 13:35-6.16(f)(1), on which plaintiffs relied, states a physician with a plenary scope of practice may not be employed or supervised by a licensee with a more limited scope of practice. Specifically, the

regulation provides licensed practitioners "may employ or otherwise remunerate other licensed practitioners to render professional services within the scope of practice of each employee's license, but which scope shall not exceed that of the employer's license." N.J.A.C. 13:35-6.16(f)(1). The judge found the responsibility to comply with the regulation rests with the medical practitioner employing the licensee and not with a temporary medical services staffing agency who facilitates the placement of the licensee. Nor, the judge found, does the regulation create a private cause of action for allegations of a breach of the regulation.

The judge also found plaintiffs had no cause of action against Next Medical under the IFPA, as Next Medical had no obligation to investigate the corporate structure surrounding ORI and no role in the formation or operation of that entity. Nor, the judge found, did plaintiffs establish Next Medical was engaged in the corporate practice of medicine. The judge again noted Next Medical is not a healthcare provider and had no involvement in the decisions concerning the medical treatment given to plaintiffs.

The judge concluded plaintiffs could not establish any act or omission of Next Medical was the proximate cause of plaintiffs' infections. The judge noted the record established Next Medical had no control over the operations of ORI,

its facility, employees, sanitary practices, or medical treatment decisions. The only role Next Medical played was placing physicians at ORI to treat patients under the supervision and control of ORI. In addition, the judge noted Rubbani's shift from independent contractor to ORI employee prior to the outbreak was a direct break in any causal chain that may have existed between any act or omission of Next Medical and plaintiffs' infections. A June 29, 2022 order memorialized the motion court's decision.

This appeal follows. Plaintiffs argue the motion court erred in concluding Next Medical owed no duty of care to plaintiffs because: (1) it was foreseeable plaintiffs would be harmed if Next Medical placed a physician under the supervision of a chiropractor; (2) Next Medical benefitted financially from placing Rubbani at ORI; (3) a violation of N.J.A.C. 13:35-6.16(f)(1), which Next Medical facilitated, could be considered evidence of negligence; (4) the court improperly relied on Next Medical's out-of-state incorporation in its legal analysis; and (5) plaintiffs' position was supported by an expert report.

II.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers

12

to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). Our focus initially is on the first required element: the presence of a legal duty. The existence and scope of a duty is a legal question for the court. Est. of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 322 (2013). We review a trial court's determination of that

question de novo.  Broach-Butts v. Therapeutic Alts., Inc., 456 N.J. Super. 25, 33-34 (App. Div. 2018).

"[T]he actual imposition of a duty of care and the formulation of standards defining such a duty derive from considerations of public policy and fairness." Vertus, 214 N.J. at 322 (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)).  While "[t]here is no bright line rule that determines when one owes a legal duty," Badalamenti v. Simpkiss, 422 N.J. Super. 86, 94 (App. Div. 2011), in examining "[w]hether a person [or entity] owes a duty of reasonable care toward another," courts must assess

> whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy.  That inquiry involves identifying, weighing, and balancing several factors – the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.  The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.
>
> [Hopkins, 132 N.J. at 439 (citations omitted).]

While "[f]oreseeability of injury to another is important, [it is] not dispositive" as "[f]airness, not foreseeability alone, is the test."  Vertus, 214 N.J. at 325 (internal quotation marks omitted).

"We are not bound by the opinion of plaintiffs' expert that the recognition of such a duty is legally required" because "[a]n expert's opinion on a question of law is neither appropriate nor probative." Est. of Campagna v. Pleasant Point Props., LLC, 464 N.J. Super. 153, 171 (App. Div. 2020) (quoting Kamienski v. State, 451 N.J. Super. 499, 518 (App. Div. 2017)).

The motion court also relied on plaintiffs' inability to establish any act or omission by Next Medical was the proximate cause of their injuries. "Proximate cause connotes not nearness of time or distance, but closeness of causal connection." Cruz-Mendez v. ISU/Ins. Servs. of S.F., 156 N.J. 556, 577 (1999) (quoting Powers v. Standard Oil Co., 98 N.J.L. 730, 732 (Sup. Ct. 1923)). "[T]o be a proximate cause . . . conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial factor in producing the particular injury." Showalter v. Barilari, Inc., 312 N.J. Super. 494, 503 (App. Div. 1998) (alterations in original) (quoting Yun v. Ford Motor Co., 276 N.J. Super. 142, 159 (App. Div. 1994) (Baim, J.A.D., concurring and dissenting)). "A superseding or intervening act is one that breaks the 'chain of causation' linking a defendant's wrongful act and an injury or harm suffered by a plaintiff." Komlodi v. Picciano, 217 N.J. 387, 418 (2014) (quoting Cowan v. Doering, 111 N.J. 451, 465 (1988)). Superseding

15

or intervening acts that "are 'foreseeable' or the 'normal incidents of the risk created' will not break the chain of causation and relieve a defendant of liability." Ibid.

Having carefully reviewed plaintiffs' arguments in light of the record and applicable legal principles, we affirm the June 29, 2022 order for the reasons stated by Judge Sheedy in her thorough and well-reasoned written decision. As Judge Sheedy aptly found, it is undisputed that at the time the infectious outbreak arose, Rubbani was the only physician administering injections at ORI. At that time, Rubbani was an employee of ORI and providing medical treatment under the supervision and control of that entity. The change in Rubbani's employment status broke the causal chain, if any ever existed, between any act or omission of Next Medical and plaintiffs' injection with an infectious agent at ORI.

In addition, we agree with Judge Sheedy's determination that Next Medical did not owe a duty of care to plaintiffs. The only legal obligation Next Medical had was to ORI with respect to the placement of healthcare professionals. Once those healthcare professionals began treating patients at ORI, they acted as independent contractors under the supervision and control of ORI. While ORI may have failed to maintain sanitary protocols, provided

16

negligent medical care to plaintiffs, and violated a regulation by allowing physicians to be supervised by a chiropractor, Next Medical had no authority or responsibility to control any aspect of the operations of ORI or its treatment of plaintiffs. The entry of summary judgment in favor of Next Medical and Carousel is supported by the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3809-21